EAST JACKSON PUBLIC SCHOOLS v STATE OF MICHIGAN

Docket No. 67583. Submitted October 13, 1983, at Lansing.—Decided March 21, 1984. Leave to appeal applied for.

Plaintiffs, East Jackson Public Schools and 19 other Michigan public school districts, and one student from each district, brought an action in the Jackson Circuit Court against defendants, State of Michigan, State Board of Education, and others, seeking a declaratory judgment that Michigan's school financing system for public elementary and secondary schools violates Article 1, § 2 and Article 8, § 2 of the Michigan Constitution of 1963. The trial court, Charles J. Falahee, J., granted the defendants' motion for a summary judgment, denied the plaintiffs' motion for a partial summary judgment and denied the defendants' motion for an accelerated judgment. Plaintiffs appeal and the defendants cross appeal. *Held:*

1. The summary judgment granted the defendants was appropriate and is affirmed.

2. Education is not a fundamental right under Michigan's Constitution of 1963.

3. The state's obligation to provide a system of free public education under Const 1963, art 8, § 2, is not synonymous with the claimed obligation to provide equal educational (financial) support.

4. The challenged statutory financing system for Michigan's public elementary and secondary schools does not deny plaintiff students equal protection of the laws in violation of Const 1963, art 1, § 2.

5. The defendant's motion for an accelerated judgment, challenging the standing of the plaintiff school districts to raise the

REFERENCES FOR POINTS IN HEADNOTES

[1] 16A Am Jur 2d, Constitutional Law § 750.

68 Am Jur 2d, Schools §§ 6, 7.

[2, 3] 68 Am Jur 2d, Schools §§ 6, 7, 79, 92.

Validity of basing public school financing system on local property taxes. 41 ALR3d 1220.

[4] 68 Am Jur 2d, Schools § 14 *et seq.*

constitutional issues involved, either on their own behalf or on behalf of their students, should have been granted.

Affirmed.

1. CONSTITUTIONAL LAW — FUNDAMENTAL RIGHTS — SCHOOLS — EDUCATION.

Education is not a fundamental right under Michigan's Constitution of 1963.

2. CONSTITUTIONAL LAW — SCHOOLS — SCHOOL FINANCING — EQUAL PROTECTION.

The state's constitutional obligation to provide a system of free public elementary and secondary education does not create a specific constitutional right to equality of educational financial support (Const 1963, art 1, § 2; art 8; § 2).

3. CONSTITUTIONAL LAW — SCHOOLS — SCHOOL FINANCING — EQUAL PROTECTION.

The legislatively-devised system for the financing of public elementary and secondary education does not deny students in the public school districts equal protection of the laws (Const 1963, art 1, § 2).

4. SCHOOLS — SCHOOL DISTRICTS — RIGHTS AND POWERS.

Public school districts are creations of the state and have no existence, no functions, no rights and no powers except as provided by the state; they are given no power, nor can any be implied, to defy the state over the terms of their existence; they have no power to bring suits regarding the terms of their existence on behalf of residents within their boundaries, or to expend public funds to finance such litigation of, or on behalf of, private citizens.

*Robert A. Sedler,* and *Rosenfeld, Grover & Frang, P.C.,* (by *Robert M. Grover),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gerald F. Young* and *James E. Riley,* Assistants Attorney General, for defendants.

Before: DANHOF, C.J., and BRONSON and W. R. PETERSON,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Per Curiam. Once again, as in *Governor v State Treasurer,* 389 Mich 1; 203 NW2d 457 (1972) *(Governor I),* opinions vacated 390 Mich 389; 212 NW2d 711 (1973) *(Governor II),* a legislatively-devised system for the financing of public education is challenged on constitutional grounds because it produces unequal per-student funding between districts.

In Michigan, the funding of public elementary and secondary schools is derived primarily from the assessment of ad valorem property taxes within local school districts, the proceeds of which vary according to the locally-determined tax rate and the value of the taxable property within a district. Both the existence of school districts providing some local autonomy in school financing and administration and the use of the locally-determined ad valorem property tax for such financing are constitutionally established,[1] as is the requirement that the state provide additional funding for education beyond that produced by local property taxes.[2]

The state's school-aid formula here attacked represents an effort by the Legislature to conform to these constitutionally-fixed institutions in such

[1] See Const 1963, art 7, § 32; art 8, § 2; art 9, §§ 3, 6, 11, 16, 25, 31 and 33; and art 11, § 6.

While school districts may be altered in size in various ways under the school laws, equalization of the tax base between districts is not, at least in theory, a reason therefor. Rather more drastic changes occur within districts where neither population nor tax base are static but fluctuate, sometimes within surprisingly short periods, as industry and commerce prosper or wane, or migrate.

[2] Const 1963, art 9, § 11:

"There shall be established a state school aid fund which shall be used exclusively for aid to school districts, higher education and school employees' retirement systems, as provided by law. One-half of all taxes imposed on retailers on taxable sales at retail of tangible personal property, and other tax revenues provided by law, shall be dedicated to this fund. Payments from this fund shall be made in full on a scheduled basis, as provided by law."

a way as to ameliorate the differences in property tax revenues among the school districts. The formula is designed to provide an incentive to maximum local self-taxation. Some school districts have so valuable a tax base as to be "out-of-formula", *i.e.,* local property tax revenues supply their entire financing and they receive no state aid.[3] There are many districts, however, having such a low tax base as to be unable, assuming a maximum local tax rate, to have as much money per pupil as the "out-of-formula" districts even after receipt of state assistance under the present state-aid formula.

Plaintiffs are 20 Michigan public school districts, and one student from each district,[4] who sought a declaratory judgment that Michigan's school financing system for public elementary and secondary schools violates Article 1, § 2, and Article 8, § 2 of the Michigan Constitution of 1963.

Count I of the complaint asserts that unequal funding violates the mandate of Const 1963, art 8, § 2, which directs the Legislature to "maintain and support a system of free public elementary and secondary schools as defined by law".

Count II asserts that the interaction of Article 8, § 2, with Article 1, § 2 (No person shall be denied the equal protection of the laws) creates a specific constitutional right to equality of educational financial support which is denied by the existing school-aid formula.

Count III asserts that the system of school financing denies to the individual student plaintiffs

---

[3] This statement is not precisely accurate for there are specific program grants and aids made outside of the general school-aid formula which are not significant for purposes of this litigation.

[4] The bona fides of the student participation in the suit has not been challenged.

the equal protection of the laws which is their due under Article 1, § 2.

Plaintiffs argue that their complaint raises different questions involving a different school financing system than was the case in *Governor v State Treasurer, supra.* It is true that the legislation attacked is different, the Legislature having since enacted a different state-aid formula, but the formula here considered produces less disparity in funding than did that previously considered.[5] Though plaintiffs may characterize their position as concerned with equality of educational support rather than equality of educational opportunity, their thesis is the same: that this and any other legislatively devised system for financing public education is constitutionally infirm unless it produces an equality of funding per student in each and every school district within the state. There is no allegation that any pupil has been or will be deprived of an opportunity for a free public education, or of an adequate opportunity for education. There is no allegation that any pupil or class of pupils is excluded from the educational system. There is no allegation that any school district fails to provide its students with an adequate education measured by any standard.

*Governor I* agreed with plaintiffs' position, holding that the right to an education was a fundamental right under Michigan's Constitution of 1963, that the then-extant school-aid formula was not rationally related to the achievement of a compelling state interest, and that it thus denied equal protection of the laws to students in those districts having the least money under the for-

[5] Both the present and prior Michigan school-aid formulas produce less funding disparity between districts than existed under the Texas statute considered in *San Antonio Independent School Dist v Rodriguez,* 411 US 1; 93 S Ct 1278; 36 L Ed 2d 16 (1973).

mula.[6] Within a month, however, the Court ordered a rehearing. Six weeks later, *San Antonio Independent School Dist v Rodriguez,* 411 US 1; 93 S Ct 1278; 36 L Ed 2d 16 (1973), was decided, holding that education was not a fundamental right protected by the United States Constitution, and that a Texas school financing system that produced disparate per-student funding in different districts did not violate the equal protection requirements of the Fourteenth Amendment to the United States Constitution. Nine months later, *Governor II* vacated the opinions in *Governor I* and dismissed the complaint by a one-sentence order stating that the Governor's request for certification of the constitutional questions[7] was improvidently granted.

In granting summary judgment for the defendants herein, the trial judge viewed the order of *Governor II* as a reversal of *Governor I,* resulting from the *Rodriguez* decision. That may or may not be a valid perception of a view held by five members of the Court who preferred not to disclose why they had carelessly answered a seemingly important constitutional inquiry. Two members of the Court, however, stated their reasons, concluding that the same result must obtain under the Michigan Constitution as was reached in *Rodriguez* under the United States Constitution. Whatever the precedential value of the nonopinion order in *Governor II,* we concur with the reasoning of the two justices who stated their basis for concurring therein: (1) Education is not a fundamental right under Michigan's Constitution of

---

[6] While the majority opinion in *Governor I* does not specifically identify who it was that was denied equal protection of the laws, it is implicit in the opinion that the Court is speaking of the pupils in the poorer districts.

[7] Const 1963, art 3, § 8; GCR 1963, 797.

1963;[8] (2) the state's obligation to provide a system of free public education under Const 1963, art 8, § 2, is not synonymous with the claimed obligation to provide equal educational (financial) support;[9] and (3) the challenged statutory financing system for Michigan's public elementary and secondary schools does not deny plaintiff students equal protection of the laws in violation of Const 1963, art 1, § 2.

The summary judgment granted defendants was appropriate and is affirmed.

A further question was appropriately raised and warrants discussion. Defendants moved for an accelerated judgment, challenging the standing of plaintiff school districts to raise the constitutional issues involved, either on their own behalf or on behalf of their students. They cross appeal from the denial of the motion, which denial was based on *Waterford School Dist v State Bd of Ed,* 98 Mich App 658; 296 NW2d 328 (1980), *lv den* 409 Mich 934 (1980). They correctly note that *Waterford* involved an action by the school district to enforce payment of funds mandated by the Headlee Amendment,[10] thus seeking to protect specific rights accorded the district. As such, standing to sue was clear. In the instant case, however, plaintiff districts do not seek to enforce rights conferred upon them but to overturn the legislative scheme of financing and to thus compel the Legislature to enact a different system that would conform to plaintiffs' theories of equality.

[8] See also *Sutton v Cadillac Area Public Schools,* 117 Mich App 38; 323 NW2d 582 (1982).

[9] *Governor II,* 390 Mich 400; also 1 Official Record, Constitutional Convention, 1961, pp 762-763; 2 Official Record, Constitutional Convention, 1961, pp 2633, 3167, 3169, 3395, the latter noting the grant of power to legislative determination per the phrase "as defined by law".

[10] Proposal E, ratified November 7, 1978, amending various sections of art 9.

They have no power to do so. School districts and other municipal corporations are creations of the state. Except as provided by the state, they have no existence, no functions, no rights and no powers. They are given no power,[11] nor can any be implied, to defy their creator over the terms of their existence. They surely have no power to bring suits of such nature on behalf of residents within their boundaries, or to expend public funds to finance such litigation of, or on behalf of, private citizens.

In *Lansing School Dist v State Bd of Ed,* 367 Mich 591; 116 NW2d 866 (1962), a school district's attempt to challenge the constitutionality of a statute governing reorganization was rejected with this language:

"Unlike the delegation of other powers by the Legislature to local governments, education is not inherently a part of the local self-government of a municipality except insofar as the Legislature may choose to make it such. Control of our public school system is a State matter delegated and lodged in the State Legislature by the Constitution. The policy of the State has been to retain control of its school system, to be administered throughout the State under State laws by local State agencies organized with plenary powers to carry out the delegated functions given it by the Legislature.

\* \* \*

"We do not believe plaintiff is a proper party to raise the question of whether or not its residents have the right to vote on the transfer. This right, if existing at all, would exist in the voters and not in the school district. Plaintiff school district is an agency of the

[11] We cannot believe that plaintiffs are serious in their argument that the legislative act of creation, designating school districts as bodies corporate capable of suing and being sued in their corporate names, MCL 380.1132(1); MSA 15.41132(1), confers upon school districts an independent power to litigate, unlimited by and unrelated to, their statutorily defined purposes.

State government and is not in a position to attempt to attack its parent. The question of how and where individuals would vote is a question between the individuals themselves and the government." 367 Mich 595, 600.

In *DeWitt Twp v Clinton County,* 113 Mich App 709, 717; 319 NW2d 2 (1982), the Court held that a county had no standing to raise constitutional due process and equal protection questions which might appropriately be raised by taxpayers therein, citing with approval the following language from *Williams v Mayor & City Council of Baltimore,* 289 US 36, 40; 53 S Ct 431; 77 L Ed 1015 (1933):

"A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator."

See also *Bowman v Wexford & Missaukee Counties Intermediate School Dist,* 16 Mich App 340; 167 NW2d 867 (1969).

The motion for accelerated judgment as to the complaint of the plaintiff school districts should have been granted.[12]

Affirmed.

---

[12] Some out-of-formula school districts, and individual taxpayers and students thereof, sought to intervene, arguing that equality in per-student funding, the end sought by plaintiffs from an overturning of the present structure of public school financing, would operate to their detriment and deprive them of the right to determine their own educational financing through self-taxation. We think that, as to the individual taxpayers and students, the petition to intervene should have been granted. *Karrip v Cannon Twp,* 115 Mich App 726; 321 NW2d 690 (1982).