No.  90-108

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

DISTRICT NO. 55, and HIGH SCHOOL
DISTRICT NO. 55-H, MUSSELSHELL
COUNTY, MONTANA,

      Plaintiffs and Appellants,

  -vs-

MUSSELSHELL COUNTY and MARGARET
REIGHARD, IN HER OFFICIAL CAPACITY
AS SUPERINTENDENT OF SCHOOLS,
MUSSELSHELL COUNTY,

      Defendants and Respondents.

APPEAL FROM:  District Court of the Fourteenth Judicial District,
               In and for the County of Musselshell,
               The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

           Laurence R. Martin and Sol Lovas; Felt, Martin,
           Frazier & Lovas, P.C., Billings, Montana

      For Respondents:

           Kenneth D. Tolliver and James C. Reuss; Wright,
           Tolliver & Guthals, Billings, Montana

Submitted:  October 25, 1990

Decided:  December 12, 1990

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

School Districts No. 55 and No. 55-H of Musselshell County, Montana, appeal the order of the District Court of the Fourteenth Judicial District granting Musselshell County's cross-motion for summary judgment. The School Districts had filed this action to obtain damages for alleged loss of operating revenues resulting from miscalculations of the mill levy by the County Superintendent of Schools. We affirm.

We frame the issues as follows:

1. Should the action have been dismissed because the School Districts had no legal authority to sue the County for damages?

2. Did the District Court correctly grant the County's motion for summary judgment based on legislative immunity?

The facts are undisputed. The Superintendent of Schools for Musselshell County admits that she miscalculated the mill levy required to raise funds needed by the School Districts for fiscal year 1986-87. Through her faulty computations, she arrived at 8.37 mills for the elementary school district general fund levy and 8.69 mills for the high school district general fund levy. Correct figures were 17.14 mills for the elementary levy and 15.25 mills for the high school levy.

The County Superintendent reported the incorrect number of mills to the Board of County Commissioners, which levied the 1986 school tax based on her figures. As a result of the low millage levy, school district revenues were short by $187,498 for the 1986-

2

87 school year. Due to use of reserve funds, operation of the schools was not impacted. Faculty and staff were paid, and no programs or personnel were cut. Since the millage levy was later adjusted, functioning of the school for the following school year was not affected.

The School Districts sued the County for recovery of lost revenues and losses of investment income on decreased reserve funds. The School Districts also requested an injunction requiring the County to reimburse the Districts for costs and damages that might be incurred in a lawsuit asserting violations of §§ 15-10-401 to -412, MCA, which limit property taxes to 1986 levels. Prior to this action, the District Court had issued an order authorizing the County to utilize correct 1986 mill levy figures for purposes of §§ 15-10-401 to -412, MCA.

Both parties moved for summary judgment. The District Court granted the motion of the County on the basis that the County was immune from suit. From this decision, the School Districts appeal.

I

Should the action have been dismissed because the School Districts had no legal authority to sue the County for damages?

Summary judgment was granted on the basis of governmental immunity. When a case is disposed of below on a motion for summary judgment before a judge sitting without a jury and the facts are uncontested, "the scope of review is much broader than in other appeals and the Supreme Court is free to make its own examination

3

of the entire case and reach a conclusion in accordance with its findings." McCain v. Batson (1988), 233 Mont. 288, 298, 760 P.2d 725, 731. Furthermore, this Court will uphold the district court's decision, if correct, regardless of the reasons given below for the result. Jerome v. Pardis (1989), 240 Mont. 187, 192, 783 P.2d 919, 922; Shimsky v. Valley Credit Union (1984), 208 Mont. 186, 190, 676 P.2d 1308, 1310.

In this case the facts are undisputed. The County concedes that the County Superintendent of Schools erred in computing the mill levy and that the County Board of Commissioners levied the incorrect tax based on her calculations. Before we address the question of governmental immunity, we need to decide the more basic issue of whether the School Districts, as governmental entities, were authorized to bring suit against the County, another governmental entity.

Since this is a case of first impression, we have reviewed decisions of other jurisdictions concerning the issue of whether one governmental entity may sue another. In some jurisdictions courts have resolved the issue based on whether the governmental entity had standing to sue. See, e.g., East Grand County School District No. 2 v. Town of Winter Park (Colo. App. 1987), 739 P.2d 862; Capital View Fire District v. County of Richland (S.C. App. 1989), 377 S.E.2d 122.

At the threshold of every suit is the requirement that parties have standing to sue. The plaintiff is required to have "'such a personal stake in the outcome of the controversy as to assure that

4

concrete adverseness which sharpens presentation of issues.'" Olson v. Department of Revenue (1986), 223 Mont. 464, 469, 726 P.2d 1162, 1166 (quoting Baker v. Carr (1962), 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678). While the School Districts may or may not meet criteria to establish standing to sue, the real issue is whether the school district, as a political subdivision of the state, has legal authority to exercise standing. Harrison County v. City of Gulfport (Miss. 1990), 557 So.2d 780, 784.

In examining decisions of other courts allowing suit on grounds other than standing, we note that most do not involve seeking damages from the other governmental entity. For example, courts have permitted challenges to the constitutionality of a statute; actions to oppose annexation of county lands by a city; suits for declaratory judgments construing state revenue laws; and actions to determine title to real property held by the state. See Rose v. Council for Better Education, Inc. (Ky. 1989), 790 S.W.2d 186 and Simons v. Laramie County School District No. 1 (Wyo. 1987), 741 P.2d 1116 (challenging constitutionality of statutes); Harrison County v. City of Gulfport (Miss. 1990), 557 So.2d 780 (annexation opposition); State ex rel. Independence School District v. Jones (Mo. 1983), 653 S.W.2d 178 (declaratory ruling on construction of statute); Coos County v. State (Or. 1987), 734 P.2d 1348 (quiet title action).

In most situations where a governmental entity has sought damages from another governmental entity, as here, the suit has not been allowed. See Carbon County School District No. 2 v. Wyoming

5

State Hospital (Wyo. 1984), 680 P.2d 773; State v. Board of County Commissioners of Johnson County (Wyo. 1982), 642 P.2d 456; but see Board of Education v. Town of Riverdale (Md. 1990), 578 A.2d 207 (local government tort immunity cannot be asserted as a defense when sued by the state or a state agency, the source of its immunity).

School districts, municipalities, and counties are political subdivisions of the state. As creations of the state, "[e]xcept as provided by the state, they have no existence, no functions, no rights and no powers." East Jackson Public Schools v. State (Mich. App. 1984), 348 N.W.2d 303, 306. When a school district or other subdivision of state government attempts to bring an action against another governmental subdivision, the state, in effect, is suing itself. Carbon County, 680 P.2d at 774. The logic of this view cannot be denied. While the taxpayers, as represented by the School Districts, may benefit, the taxpayers, as represented by the County, must pay, through taxes or insurance, the deficient funds to the School Districts.

Generally, courts will not allow suits between governmental entities unless express or implied statutory authority exists. The Missouri Supreme Court refused to permit a county assessor's appeal of a decision of a county board of equalization because no statute authorized such an appeal. O'Flaherty v. State Tax Commission of Missouri (Mo. 1984), 680 S.W.2d 153; see also City of Richmond Heights v. Board of Equalization (Mo. 1979), 586 S.W.2d 338 (city had no authority to appeal assessment by county board of

6

equalization); State ex rel. St. Francois County School District R-III v. Lalumondier (Mo. 1975), 518 S.W.2d 638 (school district not allowed to obtain review of county board of equalization decision). Similarly, Michigan courts have held that a school district has no power to challenge a state funding measure "on behalf of residents within their boundaries, or to expend public funds to finance such litigation of, or on behalf of, private citizens." East Jackson Public Schools, 348 N.W.2d at 306.

We can find no statutory authority granting a school district, a governmental subdivision, the right to sue another governmental subdivision for damages. We hold that in the absence of a specific statutory or constitutional provision, one governmental subdivision may not sue another for damages.

## II

Did the District Court correctly grant the County's motion for summary judgment based on legislative immunity?

Since we have concluded that the School Districts and the County are not proper parties to this action, we need not consider the immunity question.

Affirmed.

_John Conway Harrison_
Justice

7

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

8