884 P.2d 946 (1994)
The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF LARAMIE and The Laramie County Treasurer, In Her Official Capacity, Appellants (Defendants),
v.
LARAMIE COUNTY SCHOOL DISTRICT NUMBER ONE, Appellee (Plaintiff).
No. 93-234.
Supreme Court of Wyoming.
November 7, 1994.
*947 Thomas N. Long, Cheyenne, Craig E. Kirkwood, Laramie, and Roberta A. Coates and Cynthia L. Harnett, Cheyenne, for appellants.
J. Kent Rutledge of Lathrop & Rutledge, P.C., Cheyenne, for appellee.
Valerie Hafner Phifer, Lander, for amicus curiae Wyoming County Com'rs Ass'n.
Tracy J. Copenhaver and R. Scott Kath of Copenhaver, Kath & Kitchen, Powell, for amicus curiae Wyoming School Boards Ass'n.
Eric A. Easton, Natrona County Atty., Casper, for amicus curiae Bd. of County Com'rs and Treasurers of Albany, Campbell, Fremont, Natrona, Park, Sublette, Teton and Weston Counties.
Before GOLDEN, C.J., THOMAS, CARDINE[*] and MACY,[**] JJ., and BROWN, J., Retired.
BROWN, Justice, Retired.
Laramie County School District No. One (School District) filed this action to obtain a declaration that: (1) the School District is entitled to interest earned by the Laramie County Treasurer on revenues collected for the School District between the time the revenues were collected and the time they were distributed to the School District; (2) the School District is entitled to the interest paid by taxpayers for delinquent taxes attributable to the School District; and (3) the interest earned by the Laramie County Treasurer on revenues attributable to school district bond levies must be applied to retire the School District's bond issues. In addition, the School District requested that the Board of County Commissioners of the County of Laramie and the Laramie County Treasurer pay over to or for the benefit of the School District the amounts which have been improperly diverted in the past.
The district court granted a partial summary judgment to the School District substantially awarding the relief requested. The only issue reserved for trial was a factual issue regarding the amount of interest withheld by the Laramie County Treasurer.
We affirm and hold that our determination will be prospective.
Appellants, Board of County Commissioners of the County of Laramie (Board) and the Laramie County Treasurer (County Treasurer), identify these issues:
I. Whether the trial court properly entered partial summary judgment requiring Laramie County to pay damages to Laramie County School District No. One.
A. Whether, appellant Laramie County should be required to pay damages given appellee's defenses of lack of standing, general restitution principles, and the budget defense.
B. Whether the court lacks subject matter jurisdiction to award certain damages to appellee because appellee *948 failed to comply with the Wyoming Governmental Claims Act.
C. Whether equitable principles prevent recovery of damages by appellee Laramie County School District No. One.
D. Whether collection of a portion of the damages sought is barred by the applicable statute of limitations.
II. Whether the trial court properly entered partial summary judgment in favor of Laramie County School District No. One, to the extent such judgment requires prospective payment of certain interest amounts by Laramie County to Laramie County School District No. One.
A. Whether, under Wyo.Stat. § 21-13-207, taxes collected by the Laramie County Treasurer "belong" to the school district before the time of apportionment and distribution.
B. Whether Wyo.Stat. § 21-13-207 requires interest earned upon taxes collected by the Laramie County Treasurer, prior to the second Monday of the month, to be paid to the school district.
C. Whether Article 15 § 13 of the Wyoming Constitution requires Laramie County to pay over any interest earnings to the School District or its "bond and interest" accounts.
D. Whether appellants have a statutory or common law duty to earn interest on taxes collected for appellee school district.
E. Whether Wyo.Stat. § 21-13-207 requires that interest be paid on fines and forfeitures.
The School District urges slightly different issues:
I.
Is the County Treasurer obligated to pay over to the School District[] interest earned on revenues collected for the School District while those revenues were in the possession of the Treasurer, and interest collected by the Treasurer on the School District's share of delinquent property taxes?
II.
Do the defenses raised by Appellants prevent entry of partial summary judgment?
A. Does the School District have standing to bring an action to require the County Treasurer and the County Commissioners to pay over interest earned in the past which was improperly diverted?
B. Must the School District file a claim under the Governmental Claims Act in order to give the District Court jurisdiction to recover monies which were improperly diverted in the past by the County Treasurer?
C. Are the affirmative equitable defenses, including the so-called "budget defense", waiver, estoppel, laches, and set-off applicable in an action by a school district to require the County Treasurer and the County Commissioners to pay over monies which were improperly diverted?
D. Is the statute of limitations applicable to bar the School District from bringing an action to require the County Treasurer and the County Commissioners to pay over monies which were improperly diverted?
III.
Does the County Treasurer have a duty to act with reasonable skill, diligence, good faith and honesty, and to act as a fiduciary, with regard to the funds collected and held on behalf of the School District?
Our resolution of this case makes it unnecessary to address all the issues urged by the parties. Furthermore, in an effort not to multiply words and obscure our determination, we will not analyze every case cited or address every theory urged by the parties.
The adjudicative facts are not complicated. The County Treasurer collected revenues which she was required to collect for the School District and distributed those revenues to the School District. Since June 30, 1983, the revenue collected has earned interest between the time of collection and the time of distribution to the School District. Instead of distributing this interest to the *949 School District, along with the revenues which produced it, the County Treasurer made the interest available to the Board who used it for county purposes. Additionally, since September 1, 1988, the County Treasurer has collected interest paid by taxpayers on delinquent property taxes attributable to school district taxes and made that interest available for Board purposes.
The School District brought this declaratory judgment action for: (1) a declaration of rights and liabilities of the two governmental entities;[1] and (2) the recovery of money that should have been distributed to it in the past.
The Board and the County Treasurer counterclaimed, seeking reimbursement for interest on delinquent real property taxes which the County Treasurer had distributed and a declaratory judgment that the County Treasurer had no duty to invest and earn interest on revenues collected for the School District.
In an order dated October 7, 1993, a partial summary judgment was granted in favor of the School District. At the same time, the motion for summary judgment by the Board and the County Treasurer was denied. The summary judgment granted to the School District resolved all issues except for the issue of the amount of interest withheld by the County Treasurer. That issue was reserved for trial, there being a factual dispute concerning the calculation of the amount. The dispositive provisions of the summary judgment are:
1. Judgment in favor of the School District on the issues of the rights and obligations of the parties concerning interest earned on the various revenues in question; declaring that the County Treasurer has an obligation to pay over to the School District, or to its bond and interest fund, as the case may be, interest earned on revenues collected for the School District while those revenues were in the hands of the County Treasurer; and interest collected on delinquent property taxes attributable to the School District; and
2. Judgment in favor of the School District regarding the duty of the County Treasurer to earn interest; declaring that the County Treasurer has a duty to act with reasonable skill, diligence, good faith and honesty; and that the County Treasurer is a fiduciary with regard to the funds collected and held on behalf of the School District.
The summary judgment order provided that there was no just reason for delay and that final judgment should be entered pursuant to W.R.C.P. 54(b) as to the claims resolved in the order. An appeal was taken accordingly.

STANDING TO BRING LAWSUIT
The Board and the County Treasurer contend that the School District does not have standing to bring this action because it would violate the rule that one governmental entity cannot sue another, since it would in effect be suing itself.
We believe that Simons v. Laramie County School Dist. No. One, 741 P.2d 1116 (Wyo. 1987) is dispositive of the standing issue. In Simons, the school district brought a declaratory judgment proceeding, seeking a determination of the rights and liabilities of the parties under a statute affecting state educational funding and to recover payments that had been withheld from the school district. The state contended that the school district, as a constitutionally implemented instrumentality of the state, could not claim unpaid amounts withheld by other public officials. Id. at 1121. This court rejected the state's argument. In Simons, we said: "[S]overeign immunity as a doctrine in Wyoming does not apply to proceedings between segments of state government wherein declaratory judgment or administrative appeal provisions are available to determine respective rights and liabilities under constitutional provisions and statutory enactments." Id. at 1122. See also, Washakie County School Dist. No. One v. Herschler, 606 P.2d 310, 316-17 (Wyo.), cert. denied, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980).
The case before us, as in Simons, is a declaratory judgment action in which the School District seeks a declaration of rights *950 and obligations as well as a judgment requiring the Board and the County Treasurer to pay over to the School District interest which was diverted to the use of the county. Some loose language in the amended complaint uses the term "damages;" however, the School District is only seeking to require the Board and the County Treasurer to properly apply the funds that have been diverted by the County Treasurer.
In Carbon County School Dist. No. 2 v. Wyoming State Hosp., 680 P.2d 773, 775 (Wyo.1984), we said:
The principles here set forth [one cannot sue himself] do not apply to actions to have statutes construed and to determine correlative rights between agencies of the state, between such agencies and the state itself, and between the state and officers of the state. Town of Pine Bluffs v. State Board of Equalization, 79 Wyo. 262, 333 P.2d 700 (1958); Washakie County School District Number One v. Herschler, 606 P.2d 310, cert. denied 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980); Goshen County Community College District v. School District No. 2, Goshen County, Wyo., 399 P.2d 64 (1965).
The Board and the County Treasurer argue that District No. 55 v. Musselshell County, 245 Mont. 525, 802 P.2d 1252 (1990) supports their position that the School District does not have standing to sue. Musselshell County is not applicable to our present case. Musselshell County was not a declaratory judgment action. Furthermore, of more importance given the issues before us, Musselshell County was an action for compensatory damages while the action before this court is not. The school district in Musselshell County was seeking to recover the amount of revenues that had been lost because of miscalculated mill levies. The school district also sought to recover income that it lost by not having the uncollected revenues. This distinction was important to the decision in Musselshell County, and the court discussed the distinction between cases where damages were sought and other types of actions. Because of the factual and statutory differences in the case before us and Musselshell County, the latter is not persuasive authority for the position contended by the Board and the County Treasurer. Other cases cited by the Board and the County Treasurer are not on point.
East Jackson Public Schools v. State, 133 Mich.App. 132, 348 N.W.2d 303 (1984) was the only case cited by the Board and the County Treasurer which was brought under a declaratory judgment statute. Similarities in circumstances between that case and the case before us are rendered insignificant by the Michigan court's determination that education is not a fundamental right in Michigan. Id., 348 N.W.2d at 305. Constitutional and philosophical differences between Michigan and Wyoming minimize any precedential value East Jackson Public Schools may otherwise have on the issue of standing.
The principles set out in Simons, 741 P.2d 1116 require us to conclude that the School District has standing to bring this action. As in Herschler, 606 P.2d 310, issues of great public importance are at stake here and Simons is controlling. The district court correctly rejected the standing defense as a matter of law.

WYOMING GOVERNMENTAL CLAIMS ACT
Much of what we have said with respect to the standing of the School District to bring this action is also relevant to the question of whether or not the Wyoming Governmental Claims Act, Wyo.Stat. §§ 1-39-101 through 1-39-120 (1988 & Cum.Supp.1994), is applicable. The Uniform Declaratory Judgments Act, Wyo.Stat. §§ 1-37-101 through 1-37-115 (1988), does not invoke sovereign immunity principles for actions against governmental agencies or specify restrictions to determine the rights or the award of appropriate relief between segments of Wyoming government. Simons, 741 P.2d 1116.
The Wyoming Governmental Claims Act was enacted to address the inherently unfair and inequitable results occurring because of the application of the common law doctrine of sovereign immunity. Wyo.Stat. § 1-39-102(a). The Act provides exceptions for immunity to liability for damages for various governmental activities, as well as a procedure *951 for pursuing the claims brought under the Act. Wyo.Stat. § 1-39-113(a). The Wyoming Governmental Claims Act does not address claims brought under the Uniform Declaratory Judgments Act, and expressly excludes claims for mandamus. See Wyo. Stat. § 1-39-116(a) ("The remedy against a governmental entity as provided by this act is exclusive * * *. Nothing in this section prohibits any proceedings for mandamus * * *." (Emphasis added)).
Case law makes it clear that governmental agencies are not eligible claimants under the Wyoming Governmental Claims Act. Simons, 741 P.2d at 1119. See also, Wyoming State Hosp., 680 P.2d at 775 and State v. Board of County Com'rs of Johnson County, 642 P.2d 456, 458 (Wyo.1982). A governmental agency is not an eligible claimant under the Wyoming Governmental Claims Act because a governmental agency cannot sue another governmental agency for compensatory damages. We say again, the action here is not for compensatory damages, but rather for an action seeking a declaration of rights and obligations and a claim for monies belonging to the School District which were wrongfully diverted.
The Board and the County Treasurer rely upon Dye by Dye v. Fremont County School Dist. No. 24, 820 P.2d 982 (Wyo.1991) and Dee v. Laramie County, 666 P.2d 957 (Wyo. 1983) for the proposition that, arguably, the School District may be authorized to sue the county under Wyo.Stat. § 1-35-107 (1988), but must first file its claim pursuant to the Wyoming Governmental Claims Act.
These two cases are not authority for the Board's and the County Treasurer's theory regarding the Wyoming Governmental Claims Act in at least two respects. In both of these cases, plaintiffs sued on a tort theory. Also, in these cases, it is not one governmental entity suing another. In the case before us, we do not think the Board and the County Treasurer are complaining about lack of notice; the School District did in fact file a claim according to Wyo.Stat. § 18-3-511 (1977) (claims and demands against the county). The Board and the County Treasurer gave notice of their claim under the same statutory provision. Rather, the complaint is that the requirements of the Wyoming Governmental Claims Act were not complied with.
We hold that the Wyoming Governmental Claims Act is not applicable to an action between two governmental entities when the relief sought is a declaration of rights and liabilities of the governmental entities under statutes affecting state educational funding and for the recovery of monies that should have been distributed in the past.

EQUITABLE DEFENSES
We will make our decision in this case prospective; therefore, we need not address certain equitable defense issues such as waiver, estoppel and laches. Also, for the same reason, we need not be concerned about the statute of limitations.

ENTITLEMENT TO INTEREST
County treasurers for the various counties are obligated by statute to collect, hold and disburse various funds for the school districts.[2] Wyo.Stat. § 21-13-207 (1992) provides:

*952 On the second Monday of each month, the county treasurer shall apportion all monies in the county treasury belonging to the county school fund, including all interest earned thereon and including fines and forfeitures, among the various school districts in the county in the same percentages as provided by W.S. § 21-13-201(b) and shall immediately pay the amount to each school district.
(Emphasis added.)
Regarding interest on monies collected by a county treasurer for school districts, the statute specifically states that interest shall be paid to the school district for "county school fund" money collected. However, there are other funds collected by a county treasurer that must also be distributed.
The "county school fund" referred to in Wyo.Stat. § 21-13-207 only includes school monies that are received by a county treasurer on a county-wide basis. Certain governmental entities, however, have authority to levy or require the levy of ad valorem taxes on property within the respective district or unit.[3] School districts have this authority. Wyo.Stat. § 39-2-402(d) (1994). Wyo.Stat. § 39-4-101(a)(iv) (1994) provides:
(a) The county treasurer shall keep accurate records of taxes collected for each governmental entity for which a tax levy is made pursuant to W.S. 39-2-401 and shall pay the taxes collected to the treasurer of each governmental unit or settle accounts with the county commissioners as hereafter provided:
* * * * * *
(iv) To school districts as provided by W.S. XX-XX-XXX[.]
Property taxes are made pursuant to Wyo. Stat. § 39-2-401 (1994). Therefore, under Wyo.Stat. § 39-4-101(a)(iv), county treasurers must distribute all school district levies pursuant to Wyo.Stat. § 21-13-207; i.e., on the second Monday of each month and with interest earned thereon.
It seems reasonably clear that the interest earned from several categories of taxes constituting elements of the "county school fund" and interest earned from taxes resulting from levies by the school district must be distributed by the county treasurer to the school district according to the mandate of Wyo.Stat. § 21-13-207. Other taxes, interest and revenues belonging to the School District are property tax substitutes and reimbursements, school district property tax levies for school bond retirement and the school district's proportionate share of delinquent interest.
The distribution of these other taxes, interest and revenues belonging to a school district is not as clearly set out by statute. Rather than articulating several rationales for our determination that interest generated by these taxes and revenues should go to the School District, we choose to adopt the common law principle that interest on public funds follows those funds.
*953 We are persuaded that the reasoning and holding in Grand Rapids Public Schools v. City of Grand Rapids, 146 Mich.App. 652, 381 N.W.2d 783 (1985) is proper and should be applied in Wyoming. The Michigan court stated:
Since the statute and legislative history are silent, we must turn to established common-law principles to resolve the issue before us. In absence of a clear statutory provision to the contrary, the general principle is that interest on public funds designated for a specific purpose follows those funds. Anno: Rights and liabilities of municipality as to interest earned on improvement assessments or other special funds collected or held by it, 143 A.L.R. 1341, 1342; State Highway Comm. v. Spainhower, 504 S.W.2d 121 (Mo., 1973); Bd. of Law Library Trustees of Los Angeles County v. Lowery, 67 Cal.App.2d 480, 154 P.2d 719 (1945). In general, interest is merely an incident of the principal fund, making it the property of the party owning the principal fund. Pontiac School Dist. v. City of Pontiac, 294 Mich. 708, 715-716, 294 N.W. 141 (1940); University of South Carolina v. Elliott, 248 S.C. 218, 149 S.E.2d 433 (1966). Earnings of a trust fund belong to the beneficiary and not the municipal official who acts as trustee or custodian. Brown v. Vidro, 260 Mich. 54, 244 N.W. 227 (1932); Bd. of Supervisors of Kent County v. Verkerke, 128 Mich. 202, 87 N.W. 217 (1901).
In accord with these rules, other courts which have considered the issue have held that interest income on school tax collections belongs to the school district, and not to the county or municipal official who collected the funds. Pomona City School Dist. v. Payne, 9 Cal.App.2d 510, 50 P.2d 822 (1935); State ex rel. Fort Zumwalt School Dist. v. Dickherber, 576 S.W.2d 532 (Mo., 1979). Similarly, in the case of interest on delinquent school taxes, the rule is that interest follows principal and belongs to the taxing body. 16 McQuillin, Municipal Corporations, § 44.188, p. 617; New Orleans v. Fisher, 180 U.S. 185, 197, 21 S.Ct. 347, 352, 45 L.Ed. 485 (1901); Pontiac School Dist., supra.

Grand Rapids Public Schools, 381 N.W.2d at 785-86 (emphasis added).
There is also a constitutional basis for the common law rule that we have adopted. Wyo. Const. art. 15, § 13 states: "No tax shall be levied, except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied." (Emphasis added.) This provision is based on the general proposition that "a taxpayer has a right to know the purposes for which his money is appropriated[.]" Thomas L. Whitley, Comment, Defeating Tax Levies to Recover Excess Taxes, 4 Wyo.L.J. 233, 235 (1950).
By its own terms, Wyo. Const. art. 15, § 13 prevents a county treasurer from diverting the principal amounts of taxes collected for a school district. Courts in other states have also interpreted such provisions to bar the diversion of the interest earned on such principal.
A case from Oklahoma is instructive. Independent School Dist. No. 1 of Tulsa County v. Board of County Com'rs of Tulsa County, 674 P.2d 547 (Okla.1983). In 1976, the Board of County Commissioners of Tulsa County, Oklahoma passed a resolution requiring the county treasurer "to distribute the entire interest amount earned on the deposited but unapportioned and undistributed, local tax and state tax and revenue funds to the Tulsa County General Fund, rather than to the units of local government within the county * * *." Id. at 548. After this diversion of interest continued for three years, a school district sued to recover the interest and requested declaratory relief and injunction. The Oklahoma Supreme Court held that it was improper for the county treasurer to divert interest he earned on school district funds. The court based its decision on Okla. Const. Art. 10, § 19:
Further, the rule of law that interest is an accretion or increment to the principal fund earning it absent legislation, indicates this resultfor Okla. Const. Art. 10, § 19, provides that no tax levied and collected for one purpose shall ever be devoted to another purpose.
*954 Independent School Dist. No. 1, 674 P.2d at 550 (footnote omitted).
In 1980, the Supreme Court of Arkansas reached the same result in Mears v. Little Rock School Dist., 268 Ark. 30, 593 S.W.2d 42 (1980). There, county authorities passed an ordinance
authorizing the county collector to deposit into the County General Fund all interest earned on tax monies held by the county collector prior to transfer of these funds to the county treasurer. In effect, the ordinance provided that the county could use the tax money to earn money for the countythe interest earned not being passed on to the school districts.

Id., 593 S.W.2d at 43 (emphasis added). Two school districts sued to enjoin this diversion of interest. The Arkansas Supreme Court held that "there is no doubt that the interest belongs to the school districts." Id. at 44 (emphasis added). They based this decision on Article 16, Section 11 of the Arkansas Constitution, which is almost identical to Wyo. Const. art. 15, § 13:
"No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose."
Mears, 593 S.W.2d at 44.
Wyo. Const. art. 15, § 13 is authority for the proposition that interest earned on bond taxes must go only to the purpose of retiring bonds. See Glendale Union High School Dist. v. Peoria School Dist. No. 11, 55 Ariz. 151, 99 P.2d 482, 484 (1940) (under a constitutional provision identical to Wyo. Const. art. 15, § 13, taxes collected to retire bonds should be used for that purpose; county treasurer who collects taxes to retire school bonds is a trustee of an express trust in favor of the school district).
The principles described above are applicable to the interest paid by taxpayers on delinquent taxes. In Riverton Valley Drainage Dist. v. Board of Com'rs of Fremont County, 52 Wyo. 336, 74 P.2d 871, 873 (1937) (quoting 61 C.J. 1528), this court held that "`interest, penalty and costs collected on delinquent taxes follow the tax[.]'" This is the majority rule across the country. City of Bisbee v. Cochise County, 44 Ariz. 233, 36 P.2d 559, 563 (1934); Community Redevelopment Agency of City of Los Angeles v. Bloodgood, 182 Cal.App.3d 342, 226 Cal.Rptr. 924, 925-26 (1986); Board of Com'rs of Greenwood County v. School Dist. No. 4 of Greenwood County, 139 Kan. 297, 31 P.2d 723, 724 (1934); School Dist. No. 18 of Pondera County v. Pondera County, 89 Mont. 342, 297 P. 498, 500 (1931).
State reimbursements for the veteran's property tax exemption and the homeowner's tax credit are not distributed pursuant to Wyo.Stat. § 21-13-207 and are not "taxes" subject to Wyo. Const. art. 15, § 13. See Wyo.Stat. §§ 39-1-201(a)(xxiv), 39-1-202, and 39-1-204 (1994). These exemptions and credits reduce the tax base of school districts, cities, counties and other taxing districts. Under the principles discussed above, the interest earned on those funds, if any, belongs to the school district and must be distributed to the school district by the county treasurer.
Wyo. Const. art. 15, § 13 forbids a county treasurer from diverting to the county, or any other entity, either the principal amounts of taxes collected for a school district or the interest earned thereon. Wyo. Const. art. 15, § 13; see also, Mears, 593 S.W.2d at 44 and Independent School Dist. No. 1, 674 P.2d at 550. We hold that interest is an accretion or increment to the fund earning such interest and follows those funds.
The Board and the County Treasurer make a sophisticated but unpersuasive argument that the phrase "belonging to" in Wyo. Stat. § 21-13-207 is ambiguous and requires interpretation and, thus, partial summary judgment was improper. The Board and the County Treasurer suggest an interpretation to the effect that interest would be payable only if the County Treasurer was delinquent in making payments on the second Monday of each month as required by Wyo.Stat. § 21-13-207.
The rules to be followed in construing a statute are summarized in Allied-Signal, *955 Inc. v. Wyoming State Bd. of Equalization, 813 P.2d 214, 219-220 (Wyo.1991):
We must invoke the rule that this court looks only to the intent of the legislature when enforcing or construing statutes. * * * The rule is absolute and controlling. Strict adherence to our Wyoming constitution demands that the judicial branch of government recognize that it is without discretion, nor does it have any latitude, to apply statutes contrary to legislative intent once that intent has been ascertained.
Legislative intent must be ascertained initially and primarily from the words used in the statute. * * * When the words used are clear and unambiguous, a court risks an impermissible substitution of its own views, or those of others, for the intent of the legislature if any effort is made to interpret or construe statutes on any basis other than the language invoked by the legislature. Our precedent demonstrates that this rule also is an absolute. If the language selected by the legislature is sufficiently definitive, that language establishes the rule of law. Any additional construction can be resorted to only if the wording is ambiguous or unclear to the point of demonstrating obscurity with respect to the legislative purpose or mandate. * * * This inhibition upon statutory construction offers assurance that the legislative efforts and determinations of elected representatives will be made effective without judicial adjustment or gloss.
We previously have articulated the proposition that a statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations. * * * The converse of this proposition is that the statute is unambiguous if its wording is such that reasonable persons are able to agree to its meaning with consistency and predictability. The question of whether an ambiguity exists in a statute is a matter of law to be determined by the court.
Applying the rules set forth in Allied-Signal, Inc., we construe Wyo.Stat. § 21-13-207 to mean what it says, not a strained interpretation. Reasonable persons would consistently agree to the meaning of the language employed by the legislature. The words "belonging to" are commonly used and easily understood. So are the other words used in the statute, including the words "including all interest earned thereon." Wyo. Stat. § 21-13-207.
There is no persuasive authority supporting the notion that a school district does not at all times own the funds collected by a county treasurer. The Board and the County Treasurer contend that the express mention of the payment of interest to community colleges in Wyo.Stat. § 39-4-101(a)(v) is a directive to not pay interest to the school districts.[4] The School District contends that this argument overlooks the fact that Wyo. Stat. §§ 21-13-207 and 39-4-101 were both a part of the same act; i.e., Wyo.Sess.Laws ch. 136 (1983). In other words, the legislature provided for payment to the school districts "with interest earned thereon" at the same time it provided for payment of property taxes in accordance with Wyo.Stat. § 21-13-207. It would have been redundant, according to the School District, to include interest in Wyo.Stat. § 39-4-101(a)(iv).
Litigants and courts frequently employ convoluted, strained, and anomalous reasoning and theories in an effort to fathom and *956 explain the "doings" of the legislature. We often impute some intent to the legislature when there was no intent one way or another. Stated another way, the legislature just did not think about the problem that the litigants or courts conjured up.
It may be more honest if we are straightforward about what the legislature intended and simply say we do not know. There is no useful legislative history in Wyoming. The simple reading of Wyo.Stat. §§ 21-13-207 and 39-4-101 does not suggest to us any manifest intent with respect to the disposition of interest on taxes. Approaching these statutes from another direction, we may get a better idea what the legislature did not intend. We do not think it intended to countermand the common law rule that interest follows the tax funds that earned the interest. Nor do we believe that the legislature intended to create a special rule with respect to community colleges' entitlement to interest to the exclusion of other entities entitled to tax funds and interest or penalties by way of interest that may accrue. There is no rational reason for making a special rule for community colleges unless they have a more effective lobby.
In summary, we determine that at the moment of collection, School District monies in the County Treasurer's possession, including all interest earned thereon, belong to the School District and not to the county. State ex rel. Board of Com'rs of Goshen County v. Snyder, 30 Wyo. 468, 222 P. 40 (1924); McCague Inv. Co. v. Mallin, 25 Wyo. 373, 170 P. 763 (1918); School Dist. No. 21 in Fremont County v. Board of Com'rs of Fremont County, 15 Wyo. 73, 86 P. 24 (1906); State v. Board of Com'rs of Laramie County, 8 Wyo. 104, 55 P. 451 (1898); Powder River Cattle Co. v. Board of Com'rs of Johnson County, 3 Wyo. 597, 31 P. 278 (1892).
The majority rule, which has been adopted by this court, is that the "`interest, penalty and costs collected on delinquent taxes follow the tax * * *.'" Riverton Valley Drainage Dist., 74 P.2d at 873 (quoting 61 C.J. 1528). School district funds belong to the school district from the moment a county treasurer receives them; the interest earned on any such funds being merely an increment or accretion which also belongs to the school district entitled to said funds. Id.; see also Mears, 593 S.W.2d at 44; State v. Swanson, 182 Ind. 582, 107 N.E. 275, 277 (1914); Bordy v. Smith, 150 Neb. 272, 34 N.W.2d 331, 334 (1948); State ex rel. Bd. of County Com'rs of Bernalillo County v. Montoya, 91 N.M. 421, 575 P.2d 605, 607 (1978); City of Oklahoma City v. Oklahoma Tax Com'n, 789 P.2d 1287, 1291-92 (Okla.1990); and Independent School Dist. No. 1, 674 P.2d at 550.
An alternative construction of Wyo.Stat. § 21-13-207 urged by the Board and the County Treasurer appears to be based upon affidavits and testimony that the county treasurers throughout Wyoming have varied in their interpretation of this statute. The County Treasurer testified that a School District employee advised her that his understanding of the intent of the statute was to impose interest only on delinquent payments from county treasurers. The County Treasurer further testified that it would be difficult to follow the directive in the statute and that she would have to hire additional employees to keep track of interest earned from tax payments in order to comply with the statute as interpreted by the district court.
[T]he burden is on the moving party to demonstrate that there is no genuine issue of material fact before a motion for summary judgment should be granted. * * * However, once the movant has established a prima facie case, the burden then shifts to the opposing party to come forward with competent evidence of specific facts countering the facts presented by the movant. General allegations and conclusory statements are not sufficient.
Jones Land and Livestock Co. v. Federal Land Bank of Omaha, 733 P.2d 258, 263 (Wyo.1987).
Such materials must be evidence that would be admissible at trial. Stauffer Chemical Co. v. Curry, 778 P.2d 1083, 1095 (Wyo.1989); Sanders v. Lidle, 674 P.2d 1291, 1292 (Wyo.1984). Statements regarding a different interpretation of the statute, the understanding of a former School District employee regarding the meaning of the statute, and the supposed difficulty in following *957 the directive of the statute are not evidence that would be admissible at trial. All are incompetent and irrelevant.

DUTIES OF COUNTY TREASURER
The issue of the duty of a county treasurer came before the district court upon the Board's and the County Treasurer's motion for summary judgment requesting that the district court declare that a county treasurer has no duty to invest and earn interest on the funds collected and held for a school district.
A county treasurer has the duty to collect taxes and other monies belonging to the county and pay over to the proper entity any monies received. Wyo.Stat. §§ 18-3-802 and 18-3-805 (1977). In carrying out the duties provided for by statute, Wyo.Stat. § 18-3-803 (1977) imposes the duty on a county treasurer to exercise "reasonable skill, diligence, good faith and honesty * * *."
A county treasurer has the further duty to deposit monies collected in an appropriate financial institution, with interest to be paid by the institution upon amounts deposited in a time deposit, open account. Wyo.Stat. § 9-4-817 (Cum.Supp.1994).
The Board and the County Treasurer contend that the summary judgment order imposed a statutory and fiduciary duty on the County Treasurer to earn interest on funds in her possession. That is not exactly what the district court held. In its summary judgment, the district court held that the County Treasurer has a duty to act with reasonable skill, diligence, good faith and honesty with respect to the funds collected on behalf of the School District. In addition, the district court held that the County Treasurer is a fiduciary with respect to such funds and must exercise the judgment and care under the circumstances then prevailing which persons of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds and considering the probable income as well as the probable safety of their capital.
In Grand Rapids Public Schools, 381 N.W.2d at 784, a school district brought suit against the city treasurer seeking a declaratory judgment that interest earned on tax collections belonged to the school district and that the treasurer had a duty to advantageously invest amounts collected while they remained in defendant's hands. The Michigan court noted that a city or county treasurer is a fiduciary in the management and application of public funds. Id. at 786. Additionally, that court recognized that as a fiduciary, the treasurer has fiduciary and trust responsibilities when dealing with school taxes. Id.
A county treasurer acts as a trustee in the management of funds held by that office on behalf of others. 56 Am.Jur.2d, Municipal Corporations, Counties, and Other Political Subdivisions, §§ 277, 283, and 288 (1971). Placing or allowing substantial sums of money to be in non-interest bearing accounts for significant periods of time does not comport with the "reasonable skill, diligence, good faith and honesty" mandated by Wyo.Stat. § 18-3-803. The standard of care established by the statute will, under certain circumstances, require a county treasurer to invest and earn interest on the monies collected and held for a school district.
A county treasurer, as a matter of law, has a statutory duty and a common law fiduciary duty to act with reasonable skill, diligence, good faith and honesty with regard to monies held on behalf of a school district. Depending upon the circumstances, including the amount of the monies held and the length of time they are held, investing these funds may be required in order to comply with these duties.

PROSPECTIVE APPLICATION OF DECISION
The Board and the County Treasurer strongly urge that, in the event we agree with the district court with respect to the School District's right to interest, we provide that our decision be prospective only.
We know of no strict legal barrier which would prevent our decision to be either retroactive or prospective. We must consider equitable and other principles with regard to whether our decision will be prospective or otherwise.
*958 All parties in this appeal make compelling arguments in support of their positions. The Board and the County Treasurer urge restitution principles set out in the Restatement of Restitution and the so-called "budget defense." They also bring to our attention the doctrine of laches and statutes of limitation. Finally the Board and the County Treasurer contend that a retroactive application of our decision would result in a great financial burden on the county and spawn a multitude of claims and lawsuits by other taxing entities in the county and throughout the entire state. A combination of several of these principles leads us to conclude that our decision on interest should be prospective only.
Restatement of Restitution § 142 (1937) provides, in part:
(1) The right of a person to restitution from another because of a benefit received is terminated or diminished if, after the receipt of the benefit, circumstances have so changed that it would be inequitable to require the other to make full restitution.
(2) Change of circumstances may be a defense or a partial defense if the conduct of the recipient was not tortious and he was no more at fault for his receipt, retention or dealing with the subject matter than was the claimant.
Restatement of Restitution, supra, § 142, comment b provides, in part:
Any change of circumstances which would cause or which would be likely thereafter to cause the recipient entire or partial loss if the claimant were to obtain full restitution, is such a change as prevents full restitution if the recipient was not guilty of a tort nor substantially more at fault than the claimant.
The County Treasurer contends she acted in good faith in interpreting Wyo.Stat. § 21-13-207. Her interpretation was consistent with the interpretation of the former supervisor of accounting for the School District, to the effect that no interest on school funds would be payable to the School District unless payment was not made on the second Monday of each month when funds are required by statute to be apportioned to school districts.[5] Wyo.Stat. § 21-13-207.
It appears that the Board and the County Treasurer are not "substantially more at fault" than the School District and that it would be inequitable to require the Board and the County Treasurer to now reimburse the School District for interest earned on tax collections which the Board and the County Treasurer in good faith believed they were entitled to and after the Board and the County Treasurer changed their position by budgeting and spending interest earnings for the benefit of taxpayers in the county.
Wyo.Stat. § 21-13-207 was amended in 1983; however, the School District did not make any request for interest on school funds until April 13, 1987. Arguably, the School District is guilty of laches which would militate against recovery of the interest that was earned between June 1983 and April 1987.
Restatement of Restitution § 62 (1937) provides:
A person otherwise entitled to restitution of a benefit conferred by mistake is disentitled thereto if restitution would seriously impair the protection intended to be afforded by common law or by statute to persons in the position of the transferee or of the beneficiary, or to other persons.
Comment a to the Restatement states, in part:
A person who has benefited at the expense of another ordinarily is under a duty of restitution * * *. There are some situations, however, where a person who has knowingly benefited at the expense of another is entitled to keep what he has received without liability * * *. The rule stated in this Section is * * * for the protection of the recipient * * *.
(Emphasis added.) Comment b to the Restatement provides, in part:
The rule may also apply in the protection of the citizens of a community where a contract which is contrary to the provisions *959 of a statute has been made by its officers on its account. * * * Likewise, where a statute provides a debt limit beyond which it is illegal for a municipality to go, a person lending money to a municipality in excess of such limit may not be entitled to restitution. * * * [W]here a municipality has received money in excess of the debt limit, restitution may be granted if the money has not been used * * *.
(Emphasis added.) The committee who wrote Restatement of Restitution, supra, § 62 may not have had circumstances in mind similar to the case before us; however, the general principles discussed have some application.
The "budget defense" is an application of general restitution principles to specific circumstances. The "budget defense" may be defined in several ways. "A good faith recipient of a benefit can be excused from restitution if he has, albeit only partially, changed his position in such a way as to make it inequitable that he should restore it." Graham Douthwaite, Attorney's Guide to Restitution, § 9.2 at 369 (1977) (footnote omitted). See also, Messersmith v. G.T. Murray & Co., 667 P.2d 655 (Wyo.1983); Westamerica Securities, Inc. v. Cornelius, 214 Kan. 301, 520 P.2d 1262 (1974); Moritz v. Horsman, 305 Mich. 627, 9 N.W.2d 868 (1943); and Restatement of Restitution, supra at §§ 69 and 142.
The broad general principle of the "budget defense" indicated above is adopted in this case but limited to the situation here involving two taxing units litigating over entitlement to funds under circumstances where both units have received and expended that for which they budgeted.[6]Messersmith, 667 P.2d at 657 stated:
[M]oney paid under a mistake of fact, which would not otherwise have been paid, may be recovered unless the payee has changed his position to the extent that it would be unjust to require a refund. Akerson v. Gupta, 458 F.Supp. 189 (E.D.Mo. 1978). * * * So long as the parties can be returned to the status quo, courts should strive to achieve such a result. However, if the payees suffer damage as a result of a mistake made by the broker, recovery by the broker may be barred to the extent of the damage.
In the case before us, however, the Board and the County Treasurer have changed their position in that they have budgeted for and expended the interest improperly withheld. Messersmith seems to support the reverse of the circumstances in that case.
In Oklahoma Tax Com'n, 789 P.2d at 1289-90, on facts similar to the case here, Oklahoma City sued to recover interest earned on city taxes collected by the Oklahoma Tax Commission. The court held that a state constitutional provision required that interest earned by investment of tax revenues must be used for the same purpose as the tax. Id. at 1292. With respect to interest previously earned, the Oklahoma court did not make its decision retroactive, and explained: "[A]ll monies representing interest earned from the investment of municipal sales taxes have been appropriated. There is no fund from which the interest earned can be recovered. Therefore, although the cause is reversed, there is no remedial action which could be taken on remand." Id. at 1295.
In Choctaw Nation v. State, 490 F.2d 521, 525-26 (10th Cir.), cert. denied, 417 U.S. 946, 94 S.Ct. 3070, 41 L.Ed.2d 666 (1974), investment income realized on money in the permanent school fund had been periodically distributed to and spent by schools. The Tenth Circuit Court of Appeals held against the claimant. Since the interest earnings had been distributed and spent by the schools, no claim for damages was allowed. Id. at 525-26.
We are cognizant of the Board's and the County Treasurer's other arguments against retroactive application of our decision, such as statutory budget and audit procedure and receipt of money not budgeted for. In view of our holding against retroactive application, we need not address other arguments against retroactive application. The county treasurers in Wyoming's twenty-three counties collect taxes for numerous entities. The various school districts receive large amounts of revenues collected by the county treasurers. However, other entities, such as cemetery districts, fire protection districts, weed and *960 pest control districts and others, also receive funds collected by county treasurers. Were we to provide for retroactive application to our decision, scores of taxing entities may have a claim for interest earned on funds belonging to such taxing entities. The result of retroactive application may be numerous accounting and auditing problems; also, a multitude of claims and litigation, some of which may not be cost effective insofar as the taxpayer is concerned. Our decision is to have prospective application.

CONCLUSION
Interest is an accretion or increment to the principal fund earning it and the interest follows the fund. As soon as funds are collected by the County Treasurer, they belong to the School District and interest earned on those funds also belongs to the School District.
Depending on the circumstances, including the amount of monies held and the length of time they are held, investing these funds may be required in order to comply with the County Treasurer's fiduciary duties. Because of equitable considerations and the practical aspect of eliminating or reducing litigation, this decision is to be applied prospectively.
Affirmed with prospective application.
NOTES
[*] Retired July 6, 1994.
[**] Chief Justice at time of oral argument.
[1] The School District's complaint also included a mandamus claim.
[2] Components of the so-called "County School Fund" of Wyo.Stat. § 21-13-207 (1992):

(A) A six mill county levy authorized by Wyo.Stat. § 21-13-201 (1992);
(B) Fines and forfeitures belonging to the school district authorized under Wyo.Stat. § 21-13-206 (1992); Wyo. Const. art. 7, § 5;
(C) Taylor Grazing Act funds authorized under Wyo.Stat. § 9-4-402 (1991);
(D) A general county school tax authorized by Wyo.Stat. § 21-13-205 (1977) (repealed by Wyo.Sess.Laws ch. 43, § 2 (1981)) (some funds before repeal may be involved);
(E) Federal Forest Reserve funds authorized under Wyo.Stat. §§ 9-4-501 through 9-4-504 (1991).
School District Property Tax Levies:
(A) A twenty-five mill school district levy authorized by Wyo.Stat. § 21-13-102(a)(i)(A) (1992 & Cum.Supp.1994);
(B) An optional school district levy of up to three mills authorized by Wyo.Stat. § 21-13-102(a)(i)(B);
(C) An optional school district levy of up to two and one-half mills for vocational and adult education authorized by Wyo.Stat. § 21-12-103 (1992);
(D) An additional three mill levy for capital facility repair, maintenance or renovation authorized under Wyo.Stat. § 21-13-102(a)(i)(C)(I) and (II);
(E) A one-half mill special school district tax for Board of Cooperative Educational Services (BOCES) authorized under Wyo.Stat. § 21-20-109 (1992).
Property Tax Substitutes and Reimbursements:
(A) Motor vehicle taxes and fees authorized under Wyo.Stat. § 31-18-201 (1994) and Wyo. Stat. §§ 31-3-101 through 31-3-103 (1994);
(B) Car company taxes levied by the State Board of Equalization and disbursed to the county treasurer authorized under Wyo.Stat. § 39-2-207 (1994);
(C) Reimbursements from the state treasurer to the county treasurer for home owner's tax credits (homestead exemption) authorized under Wyo.Stat. § 39-1-204 (1994);
(D) Reimbursements from the state treasurer to the county treasurer for veteran's exemptions authorized under Wyo.Stat. § 39-4-103 (1994).
School District Property Tax Levies for School Bond Retirement:
(A) A levy for building and reserve fund authorized under Wyo.Stat. § 21-13-501 (1992);
(B) Variable school district levy for the principal and interest on bonds authorized under Wyo.Stat. § 21-13-713 (1992).
The school district's proportionate share of delinquency interest collected from taxpayers under Wyo.Stat. § 39-3-101 (1994).
[3] See footnote twoschool district property tax levies.
[4] Wyo.Stat. § 39-4-101 states, in pertinent part:

(a) The county treasurer shall keep accurate records of taxes collected for each governmental entity for which a tax levy is made pursuant to W.S. 39-2-401 and shall pay the taxes collected to the treasurer of each governmental unit or settle accounts with the county commissioners as hereafter provided:
* * * * * *
(iv) To school districts as provided by W.S. XX-XX-XXX;
(v) On the second Monday of each month including all interest received in the cases of community colleges;
(vi) On November 10, January 10 and May 10 for all other governmental entities.
* * * * * *
(c) Upon sale of property for the nonpayment of taxes, the proceeds thereof shall be distributed as follows:
(i) The portion attributable to school district levies is payable to the proper school district;
(ii) The portion attributable to a levy by a city or town is payable to the proper city or town;
(iii) The balance is payable to the county general fund.
[5] We previously determined that the hearsay testimony of the former supervisor of accounting for the School District was incompetent regarding the interpretation of Wyo.Stat. § 21-13-207; however, it may be relevant and competent to show the good faith of the County Treasurer.
[6] The "budget defense," without denominating it as such, was employed in Fall River Joint Union High School Dist. v. Shasta Union High School Dist., 104 Cal.App. 444, 285 P. 1091 (1930).