SALT LAKE COUNTY, PLAINTIFF *v.* THE STATE BOARD OF EQUALIZATION OF THE STATE OF UTAH, ET AL., DEFENDANTS.

STATE BOARD OF EQUALIZATION — DUTIES OF — ASSESSMENT ON ROLLING STOCK — R. S. 1898, SEC. 2513 — RIGHTS OF COUNTY THROUGH WHICH RAILROAD PASSES — PRINCIPAL PLACE OF BUSINESS — R. S. 1898, SECS. 2559, 2560, 2561 — MANNER OF APPORTIONING ASSESSMENT — AUTHORITY OF BOARD TO OBTAIN INFORMATION — RECONVENING OF BOARD.

*State Board of Equalization—Duties of—Assessment on Rolling Stock—R. S. 1898, Sec. 2513.*

Section 2513, R. S. 1898, imposes upon the State board of equalization the duty of assessing all property and franchises of railroads and other companies operated in more than one connty.

*Rights of County Through Which Railroad Passes — Principal Place of Business—R. S. 1898, Secs. 2559, 2560, 2561.*

Under R. S. 1898, Secs. 2559, 2560 and 2561, each county through which a railroad is operated is entitled to a tax upon the average per cent. of its rolling stock used within the county, though the principal place of business may be located in another county.

*Manner of Apportioning Assessment.*

It is the duty of the State board of equalization to ascertain or approximate the average number of engines and cars operated in each county, and the ratio such number bears to the total number of engines and cars operated in the State; on that basis the whole assessment should be apportioned to the various counties.

*Authority of Board to Obtain Information—Reconvening of Board.*

Under Sec. 2559 R. S. 1898, the Board of Equalization has authority to demand and obtain all facts necessary to enable it to make a fair assessment and just apportionment of the tax upon rolling stock among the various counties and may reconvene for that purpose.

(Decided December 3, 1898.)

Original application by Salt Lake County in *certiorari* to review the action of the State Board of Equilization, and the method followed by them in apportioning the assessments on rolling stock of certain railroad companies.

*Waldemar Van Cott, Esq., Graham Putnam, Esq.,* and *Ray Van Cott, Esq.,* attorneys for plaintiff.

The provisions of the Revised Statutes under which defendants acted in making the apportionment complained of, are Sections 2513, 2559, 2560 and 2561. It will be seen from an examination of these sections, that two duties with respect to the property of railroads operating in more than one county in the State, are imposed by the statute, upon the State Board of Equilization. First, to assess all property of such railroads. Second, to apportion the assessment when made to the several counties through which the roads run in proportion to the value of such property in each county.

We take it that Section 2560 is to be construed in connection with Section 2515, providing that all taxable property must be assessed in the county, city, town or district in which it is situated, and that the policy of our law with respect to railroad property is the same as it is with respect to other property, that it shall be taxed where it is situated, and that where property receives governmental benefits, there it shall bear its share of governmental expenses. We contend that in the absence of a statute establishing a different rule, railroad rolling stock is situated, i. e., has its situs for the purposes of taxation at the principal office of the railroad company and is taxable there and nowhere else. It is now well settled that railroad rolling stock is personal property. *Williamson* v. *R. R. Co.,* 29 N. J. Eq., 312, 327; *Randall* v. *Elwell,* 52 N. Y., 521; *Hoyle* v. *Railroad Co.,* 54 N. Y., 314;

*Neilson* v. *R. R. Co.*, 51 Iowa, 184; *R. R. Co.*, v. *Gilmore*, 37 N. H., 410; *Railway Co.* v. *Ft. Howard*, 21 Wis., 45; *R. R. Co.*, v. *Allen*, 22 Fed., 376; *Dubuque* v. *R. R. Co.*, 39 Iowa, 56; *Coe* v. *R. R. Co.*, 10 Ohio St., 372.

It is also well settled that personal property which has no situs or location of its own, follows the domicile of the owner for the purposes of taxation.   Cooley on Taxation, p. 372.

This rule is also applicable to the property of corporations.   Cooley on Taxation, p. 378.

The residence of a corporation is where its principal office is located.   *Thorn* v. *Central R. R. Co.*, 36 N. J. Law, 121.

In accordance with these principles the authorities are unanimous in laying down the rule that railroad rolling stock, having from the nature of things, and from the character of its use, no fixed location or situs of its own, must be taxed at the place where the principal office or place of business of the railroad within the State is located.   *R. R. Co.* v. *Morgan Co.*, 14 Ills. 163; *R. R. Co.* v. *Appeal Tax Court*, 50 Md. 397; *R. R. Co.* v. *Alexandria*, 17 Gratt. (Va.) 176; *Dubuque* v. *R. R. Co.*, 39 Iowa 56; *Pacific R. R. Co. Cass County*, 53 Mo. 17; *State* v. *Severance*, 55 Mo. 378; *R. R. Co.* v. *Saco*, 60 Me. 196; *Hays* v. *Pacific M. S. Co.* 17 How. 596; *Hays* v. *Pacific M. S. Co.* 8 L. R. A. 300.

*Hon. A. C. Bishop*, Attorney General, for defendants, cited no authorities.

ZANE, C. J.

In this action Salt Lake County asks this court to review the action of the State Board of Equalization to determine

whether it has regularly pursued its authority in apportioning the assessment of the rolling stock of the Oregon Short Line, Rio Grande Western and Salt Lake and Ogden, Railroad Companies among the various counties through which they are operated. Judgment is prayed annulling such apportionment.

The plaintiff insists the law required the board to allot the entire assessment of such stock to Salt Lake County because the principal place of business of the respective companies are located there. Plaintiff also alleges the rolling stock of the narrow gauge branch of the Oregon Short Line and of the Utah Central Division of the Rio Grande Western, and of the Salt Lake and Ogden is habitually kept in Salt Lake county, and is only absent therefrom when passing back and forth over the road and when temporarily detained at way stations.

As to the broad gauge branches of the Oregon Short Line and the Rio Grande Western, it is alleged they have switch yards and repair shops in Salt Lake county, where at all times a large proportion of their rolling stock is kept. It also appears, with two or three exceptions, the other counties of the State to which the assessment of rolling stock was apportioned have no stations within them at which any of such stock is kept.

The plaintiff claims the State Board of Equalization adopted an erroneous and unjust method of allotting to the respective counties, through which the respective roads are operated, their portions of the assessment of rolling stock.

The board determined the relation between the amount of the assessment of the rolling stock of the road in the county, and the entire amount of the assessment of such stock in the state, should be the same as the relation between the number of miles of its main track in the county,

and the number of miles of its main track in the state.

The board adopted as a basis of allotment to a county, such proportion of the entire assessment of the rolling stock of the road in the state as the number of miles over which it ran cars within the county bore to the whole number of miles over which it operated cars within the state.

The question is, did the board adopt the correct standard in apportioning the assessment of rolling stock to the respective counties through or into which the railroads are operated?

Undoubtedly the rolling stock of railway companies is personal property, and without constitutional or statutory provisions to the contrary, the situs of such property for taxation is its owner's domicile; while the situs of real estate is where nature has placed it. In the absence of such constitutional or statutory provisions the law requires the personal property of a railway company to be taxed in the county in which its principal place of business is located. This brings us to the inquiry, does the constitution or statutes of this State expressly, or by necessary implication, authorize the taxation of the rolling stock of railroads extending into, or through more than one county, for the benefit of the county in which it is kept or used. Sec. 10, Art. 13, of the State constitution, is as follows:

"All corporations or persons in this State, or doing business herein, shall be subject to taxation for State, county, school, municipal or other purposes, on the real and personal property owned or used by them within the territorial limits of the authority levying the tax."

This section declares corporations or persons shall be subject to taxation on the real or personal property owned or used by them within the territorial limits of the authority levying the tax. It is sufficient if the property is used

by the corporation or person within the territorial limits of such authority. The use meant is not a temporary use of personal property in such county when its owner resides elsewhere. It means the continuous use of its property by the corporation or other person in the county, or other taxing district. In the case of rolling stock of railroads, engines and cars are continually changing, some going out and others coming in, while a certain per cent of its stock is continually in use in such county. Such average number used in the county may be taxed. Sec. 11, of the same Article of the Constitution, reads:

"The duty of the State Board of Equalization shall be to adjust and equalize the valuation of the real and personal property among the several counties of the State. The duty of the County Board of Equalization shall be to adjust and equalize the valuation of the real and personal property within their respective counties. Each board shall also perform such other duties as may be prescribed by law."

This section requires the board to adjust and equalize the valuation of real and personal property among the counties and to perform such other duties as may be prescribed by law. In pursuance of these constitutional provisions the legislature has provided as follows:

"All property and franchises owned by railroad, street railroad, car, telegraph, and telephone companies operating in more than one county in this state, must be assessed by the state board of equalization as hereinafter provided. Other franchises, if granted by the authorities of a county or city, must be assessed in the county or city within which they were granted; if granted by any other authority, they must be assessed in the county in which the corporations, firms, or persons owning or holding them

18 Utah—12.

have their principal place of business." Rev. Stat. Utah, 1898.   Sec. 2513.

This section imposes upon the State Board of Equalization the duty of assessing all property and franchises of railroads and other companies operated in more than one county.   Had the legislature intended property operated in more than one county to be assessed at the principal place of business of such companies, doubtless it would have authorized the county authorities of the county in which said place of business might be situated to make the assessment.

Sec. 2559 *Id.* provides:

"The president, secretary, or managing agent, or such other officer as the State Board of Equalization may designate, of any corporation, and each person or association of persons, owning or operating any railroad, street railway, car, telegraph or telephone line in more than one county in this state, must, on or before the first Monday in February in each year, furnish the said board a statement signed and sworn to by one of such officers, or by the person or one of the persons forming such association, showing in detail for the year ending on the first Monday in February in each year, all the property, real, personal, or otherwise, owned by said corporation, person, or association of persons in the state, including a statement of mileage in each county, as valued on the first Monday of February of the same year and such other information as the board may require.   Any officer of a railroad company, street railway, telegraph or telephone line, or car company, failing on demand to furnish the statement required of him, shall be subject to the penalty provided in subdivision two, section twenty-five hundred and twenty-one."

Sec. 2560, *Id.* after providing for meetings of the board, says:

"At such meetings the board must assess all property and franchises of railroads, car, street railway, telephone, and telegraph companies operating in more than one county of this state; but franchises derived from the United States must not be assessed. All such property must be assessed in the name of the person, corporation, or association owning, leasing, or using the same. Before the first Monday of July, the board must apportion the total assessment of all property and franchises of such companies to the several counties in proportion to the value of such property in each county."

This section requires the state board to assess the property of railroads and other corporations mentioned operating their lines in more than one county. It requires the assessment to be made in the name of the person, corporation or association owning, leasing, or using the same. The board is also required to apportion the total assessment of such property to the several counties in proportion to the value of such property in each county.

Sec. 2561, *Id.* requires the board to transmit to the county auditors of the respective counties a statement showing their respective apportionments.

These provisions manifest an intent to give to each county through which a railroad is operated a tax upon the per cent. of its rolling stock used within it, in the operation of such road, though its principal place of business may be located in another county.

The assessment in question is upon the engines and cars of the respective railroads. The tax in question is a property tax, not a tax on business, or for the privilege of operating the railways through the counties, nor is it a tax on the capital stock of the railroad companies.

The legislature assumed a railway company operating its road in more than one county would use a certain per cent. of its engines and cars in each. The number of its engines and cars so used must vary from time to time, but it is the duty of the Board of Equalization to ascertain or approximate the average number. On that basis the whole assessment on the rolling stock of the respective roads should be apportioned to the various counties. Portions of the entire assessment equal to the assessment upon the average per cent. of rolling stock used in the respective counties should be apportioned to each of them.

The board assumed the number of engines and cars would average the same upon each mile of the road's main track in all the counties; that the same number would be used on the same number of miles in each county through which the roads were operated. It is apparent an apportionment of the whole assessment on such a basis resulted in great injustice. To illustrate, the Oregon Short Line, one of the roads, runs through nine counties, among them are the counties of Salt Lake and Millard, and there is probably five times as many miles of main track in Millard as in Salt Lake. On the basis adopted by the board the portion allotted to Millard would be five times greater than the portion allotted to Salt Lake; yet on the twenty-five or thirty miles of track in the latter county there was on an average more than twenty times as many engines and cars used daily. The value of the rolling stock actually used in Millard could not have been more than the twentieth part of that used at the same time in Salt Lake. The injustice resulting to Weber County must be about as great as to Salt Lake County. The injustice results from the fact that some of the counties are sparsely settled, having but few trains and few stations, while others are densely populated, have

many stations and trains, and much business. The error in the apportionment consists in giving to one county assessments on property used in another. The consideration received by the company for the tax taken by the county consists in the protection and benefits to its property and business from the county and its authorities. The county furnishing the consideration for the tax should receive the tax—the consideration for the protection and benefit it furnishes.—To give the tax to another county would violate the fundamental principles upon which its collection can be justified.

Courts, whose decisions are entitled to great weight, have sustained the apportionment of property used by railroads, telegraph and sleeping car companies in different states or lesser taxing jurisdictions on the mileage basis. In view of all the difficulties, conditions and elements taken into consideration in those cases upon a basis was accepted as just and practical for ascertaining the property used or the business carried on and taxed for the benefit of each state or other jurisdiction.

The facts conceded on the argument, and others of which we may take notice, authorize the foregoing inferences. The assessment in question must be regarded as the equivalent of an assessment actually made upon the property of the company actually used in the county and having its situs there. No county can be legally entitled to the benefits of any portion of an assessment on the property used in another county. By apportioning the assessment of rolling stock to the counties according to the mileage of main track in each, the board reached a most unequal and unjust result as we have seen. Had the distribution been made on the basis of miles of main track and switches, apportiomtent would have been nearer right; still that would not have been a just basis. It is

probably true there are more engines and cars used or standing daily on some of the switches of the Rio Grande Western or the Oregon Short Line in Salt Lake and Weber counties than in some of the counties in which these roads are operated during the same time.   We are of the opinion, however, the Board of Equalization can ascertain with reasonable certainty and accuracy the average number of engines and cars used in each county, by obtaining from the roads their wheelage or car mileage in such counties, and that would have been a more just basis, and we think that should have been adopted.   It might not be necessary to obtain the car mileage of each day.   By taking such mileage at different times during the year an average can be made to substantially approximate the reality.   In any event we have no doubt the board can make a more correct estimate from information obtained from the officers of the respective roads.

Sec. 2559 *Id.* gives the Board of Equalization ample authority to demand and obtain all facts necessary to enable it to make a fair assessment of their property, and to make a just apportionment of such assessment to the respective counties.   We are of the opinion the Board of Equalization has not thoroughly and regularly pursued its authority in apportioning the total assessment of the rolling stock of the Oregon Short Line, Rio Grande Western, and Salt Lake & Ogden Railroad Companies to the various counties, into or through which the roads of such companies are operated.   In allotting to each county into or through which the road is operated such proportion of the whole assessment of its rolling stock in all the counties as the number of miles operated in each bears to the number of miles operated in all, the Board of Equalization did not regularly pursue its authority.   The board should have ascertained the average number of engines and cars used

in each, also including those not used, and their value, and apportioned that.

The orders of said board, apportioning the assessment on the rolling stock of said corporations, are set aside and annulled, so far as they apportion said assessment on the rolling stock to the various counties into or through which the said roads are operated; that the board may reconvene and make a fair and just apportionment of such rolling stock to said counties, in the light of reliable and accurate data, and on a proper basis.

BARTCH, J. and MINER, J., concur.