1999 UT 41

**SALT LAKE CITY CORPORATION, a Utah municipal corporation, and Salt Lake City School District, Petitioners,**

v.

**PROPERTY TAX DIVISION OF THE UTAH STATE TAX COMMISSION, Respondent.**

Salt Lake City Corporation, a Utah municipal corporation, and Salt Lake City School District, Plaintiffs and Appellants,

v.

Property Tax Division of the Utah State Tax Commission, Defendant and Appellee.

Nos. 970567, 980211.

Supreme Court of Utah.

April 30, 1999.

Steven W. Allred, Lynn H. Pace, Salt Lake City, for Salt Lake City.

Michael M. Later, Stephen E.W. Hale, Bryan T. Allen, Salt Lake City, for Salt Lake City School District.

Jan Graham, Att'y Gen., Kelly W. Wright, John C. McCarrey, Brian L. Tarbet, Asst. Att'ys Gen., Salt Lake City, for Tax Commission.

Brinton R. Burbidge, Blake T. Ostler, Patrick L. Tanner, Salt Lake City, for amicus school districts.

RUSSON, Justice:

¶ 1 This is a consolidated appeal and petition for a writ of review from two proceedings originating before the State Tax Commission. Petitioners Salt Lake City Corporation and Salt Lake City School Dis-

trict (collectively, "Salt Lake City"[1]) request a ruling invalidating the method by which the Tax Commission apportions the taxable property of interstate airline carriers. The Tax Commission's apportionment method authorizes political subdivisions to levy a tax on commercial airplanes flying over their territories even if the planes never land within those territories. The Tax Commission denied Salt Lake City's petitions for a rule changing the apportionment method and for an adjustment of the value apportioned to it. Salt Lake City petitioned the district court for review. The district court held that it had no jurisdiction.

## BACKGROUND

¶ 2 This consolidated appeal arises out of two proceedings before the State Tax Commission. Both proceedings addressed the Tax Commission's method of apportioning the taxable property of commercial airlines. The Property Tax Division of the State Tax Commission is responsible for centrally assessing airline property pursuant to Utah Code Ann. § 59–2–201(1)(c) (Supp.1998). Airlines are valued by the unit method. There are two essential steps to this valuation. The first step "allocates" Utah's share of aircraft value vis-a-vis other states, and the second step "apportions" taxable value among the various taxing subdivisions of the state. To obtain Utah's allocated value, the Division first determines the entire system value of various airlines and calculates the portion of the system value that is attributable to "mobile flight equipment" (i.e., aircraft).[2] Then, according to an agreement with the airline industry and the Western States Association of Tax Administrators, the Division allocates Utah's portion of the aircraft value on the basis of the number of flights landing in the state and the originating and terminating tonnage of those flights.

¶ 3 After the Division allocates Utah's share, it apportions the taxable value to various tax-levying entities within the state. Prior to 1995, there was no statute or administrative rule governing the method for apportioning taxable value of commercial airplanes among different taxing entities. The longstanding custom and practice of the Tax Commission was to apportion the value according to "straight line" flight paths. According to this method, actual flight paths were approximated along a straight line between flight destinations. The taxing entities over which the straight line paths passed would then levy a tax pursuant to the value apportioned to them by the Tax Commission. This method of calculation is similar to that employed for taxing other mobile assets that operate across county and state lines, such as trains and other common carriers.

¶ 4 In June of 1994, Salt Lake City filed a petition for exercise of rulemaking power with the Tax Commission pursuant to Utah Code Ann. § 63–460–(b)–12. Salt Lake City requested a rule that would prohibit the straight line method of assessment and would rely instead on a formula based on the location of landings and takeoffs; under this proposed rule, Salt Lake City (and its school district) would receive virtually all of the apportioned revenue because Salt Lake International Airport is located within its territorial boundaries. Salt Lake City also filed an objection and a petition for redetermination in which it protested the aircraft value apportioned to Salt Lake City for the 1994 tax year.

¶ 5 The Tax Commission rejected both petitions. On December 14, 1994, the Commission formally declined to adopt Salt Lake City's proposed rule and, instead, promulgated a rule codifying the prior custom and practice of the straight line apportionment method. We will refer to this order as the "Rulemaking Order." The rule adopting the straight line method became effective on July 6, 1995. *See* Utah Admin. Code R884–24P–50. On October 6, 1995, the Tax Commission

---

1. Salt Lake City and Salt Lake City School District are distinct tax-levying subdivisions. Nevertheless, due to the unity of interests presented and for the sake of convenience we will refer to the two plaintiffs as a single entity except where our discussion merits separate treatment.

2. Nonmobile airline assets are taxed according to their situs on the ground.

terminated the related adjudicative proceeding by formally denying Salt Lake City's objections and affirming the apportionment of aircraft values in accordance with the straight line method. We will refer to this order as the "Adjudicatory Order."

¶ 6 On November 3, 1995, Salt Lake City filed a petition in the district court for review of both the Rulemaking Order and the Adjudicatory Order. Salt Lake City argued that the straight line method of apportionment is illegal under state and federal law. Specifically, Salt Lake City asserted that article XIII, section 10 of the Utah Constitution prohibits apportionment of taxable value on property outside the "[t]erritorial limits of the authority levying the tax" and that 49 U.S.C. § 40116(c) prohibits "a state or a political subdivision of a state" from levying or collecting a tax unless the aircraft lands within the boundaries of the taxing entity. Salt Lake City relied upon Utah Code Ann. § 63–46a–12.1, which relates to review of administrative rule making generally, for district court jurisdiction to review the Rulemaking Order. With respect to the Adjudicatory Order, Salt Lake City asserted the district court had jurisdiction pursuant to Utah Code Ann. § 59–1–601(1), which purported to grant a right to trial de novo on appeal from the Tax Commission's formal adjudicative decisions.

¶ 7 While Salt Lake City's petitions were pending in the district court, this court rendered a decision in *Evans & Sutherland Computer Corp. v. Tax Comm'n*, 953 P.2d 435, 443 (Utah 1997). *Evans & Sutherland* held that section 59–1–601 was unconstitutional because the provision for trial de novo in the district court usurped the constitutional role of the Tax Commission. *Id.* Accordingly, the district court dismissed the portion of Salt Lake City's petition relating to the Adjudicatory Order for lack of subject matter jurisdiction. Salt Lake City now seeks direct review of the Adjudicatory Order by petition to this court.

¶ 8 On March 30, 1998, the district court sua sponte concluded that *Evans & Sutherland* also barred consideration of the Rulemaking Order and dismissed Salt Lake City's remaining petition.[3] Salt Lake City appealed from the district court's dismissal of its challenge to the Tax Commission's Rulemaking Order. As consolidated, we consider the appeal of the district court's dismissal of the Rulemaking Order along with the direct petition for review of the Tax Commission's Adjudicatory Order. An association of school districts outside Salt Lake City whose tax base would be affected by any ruling on these issues petitioned for and was granted permission to participate as amicus curiae.

## DISCUSSION

■ ¶ 9 The fundamental question presented by the petition from the Tax Commission's Adjudicatory Order concerns the constitutional and statutory validity of the Commission's straight line method for apportioning the taxable value of aircraft. The specific issue presented by the appeal from the district court's holding with respect to the Rulemaking Order is whether our holding in *Evans & Sutherland* deprived the district court of subject matter jurisdiction over Salt Lake City's petition for review of the Tax Commission's rulemaking proceedings. The Tax Commission also presents a new issue on appeal, contending that Salt Lake City has no standing to challenge the Tax Commission's apportionment of aircraft taxable value. *See Olson v. Salt Lake City Sch. Dist.*, 724 P.2d 960, 964 (Utah 1986) (lack of standing is jurisdictional and may be raised at any time). All of these issues are purely legal in nature. We therefore grant no deference to the district court's or the Tax Commission's rulings of law. *See Brunner v. Tax Comm'n*, 945 P.2d 687, 689 (Utah 1997) (reviewing Tax Commission decision); *In re Jones*, 720 P.2d 1356, 1360–61 (Utah 1986) (reviewing district court review of

---

3. The district court, however, took the further unusual step of making a "contingent" ruling that, to the extent it did possess jurisdiction, the straight line rule violated Utah constitutional and statutory law, and federal law. The Tax Commission did not file a cross-appeal. We offer no opinion as to the effect of the contingent ruling. We simply note that although the contingent ruling is not before us, many if not all the issues it addressed have been properly presented in Salt Lake City's direct petition for review of the Tax Commission's Adjudicatory Order.

agency action). As the questions relating to standing and district court jurisdiction are threshold issues, we treat them first and then examine the legality of the straight line apportionment method.

## I. SALT LAKE CITY'S STANDING TO BRING SUIT

¶ 10 The Tax Commission asserts that municipalities and school districts have no standing to challenge assessments or apportionments. The Tax Commission argues that (1) Salt Lake City has suffered no injury giving rise to standing, and (2) counties, rather than municipalities or school districts, are the only entities authorized to bring suit.

¶ 11 The Tax Commission first claims that Salt Lake City cannot make the necessary showing that it is an "aggrieved" party under the statute designating who may challenge an administrative rule. *See* Utah Code Ann. § 63–46a–12.1(1)(a) (1997).[4] The Tax Commission by implication also argues that, under general principles governing standing, Salt Lake City may not challenge either the Rulemaking or the Adjudicatory Order. We see no basis for holding that the term "aggrieved," as employed by the statute, carries any special meaning beyond that which inheres in the traditional principle that claimants "must be able to show that [they have] suffered some distinct and palpable injury that gives [them] a personal stake in the outcome of the legal dispute."[5] *Jenkins v. Swan,* 675 P.2d 1145, 1148 (Utah 1983). We therefore apply the "distinct and palpable injury" criteria to all claims in this consolidated appeal.

¶ 12 Under this criteria, the Tax Commission's arguments fail. Salt Lake City has alleged that it is aggrieved and injured because it has been deprived of substantial allocated taxable aircraft value by virtue of an unconstitutional and illegal apportionment method. A very similar injury was alleged in *Kennecott Corp. v. Salt Lake County,* 702 P.2d 451, 453 (Utah 1985). In that case, Salt Lake County, in its capacity as a tax-levying entity, asserted that the Tax Commission had failed to properly assess Kennecott's personal property at its full cash value and had relied on a statute that unconstitutionally undervalued mining property. We concluded that "[i]f, as alleged, Kennecott's state-assessed mining properties are underassessed, then the County 'suffer[s] some distinct and palpable injury that gives [it] a personal stake' in the assessed value of state-assessed properties." *Id.* at 454 (quoting *Jenkins,* 675 P.2d at 1148).

¶ 13 The fundamental nature of the injury alleged in *Kennecott* was virtually indistinguishable from that claimed in the instant case. The alleged undervaluation of mining property in *Kennecott* affected "the tax base of both the County and the taxing districts within the County." *Id.* Likewise, if Salt Lake City has been illegally deprived of taxable aircraft value, such a loss directly impacts Salt Lake City's tax base and affects the mill levies it imposes. In short, the Tax Commission has articulated no relevant distinction between the injury alleged in this case and that alleged in *Kennecott.* Therefore, Salt Lake City has alleged a "distinct and palpable injury" and has standing to bring this action.[6]

---

4. The relevant text of this statute provides:

   Any person aggrieved by a rule may obtain judicial review of the rule by filing a complaint with the county clerk in the district court where the person resides or in the district court in Salt Lake County.

   Utah Code Ann. § 63–46a–12.1(1)(a) (1997).

5. The Tax Commission indirectly contends that we adopted a narrower meaning of "aggrieved" in *Little America Hotel Corp. v. Salt Lake City,* 785 P.2d 1106, 1108 (Utah 1989). That case dealt with a hotel's claim that a tax was an unreasonable burden. *Little America* does not support the Tax Commission's contention. We never addressed the question of standing and

spoke of "aggrieved" parties not in any attempt to define that word for the purposes of administrative appeals, but simply in its ordinary usage as a word describing the prejudice justifying a legal complaint.

6. The Tax Commission offers other arguments that are without merit. Its assertion that Salt Lake City has suffered no diminution in allocation of taxable value ignores the fact that legal injury is not limited to deprivation of a benefit previously possessed, but may consist in the continuing denial of a benefit to which a party is entitled. The Tax Commission also contends that Salt Lake City cannot show injury because "Truth in Taxation" laws, *see* Utah Code Ann.

¶ 14 The Tax Commission also contends that the State has not authorized municipalities and school districts to bring suit against state agencies such as the Tax Commission. We squarely addressed the question of authority to bring suit in *Kennecott*. In that case, Kennecott and the Tax Commission defended against cross-claims wherein Salt Lake County alleged unconstitutional undervaluation and improper assessment methodology. Kennecott and the Tax Commission argued that the County lacked standing to bring its cross-claims because there was no statute explicitly authorizing the County's challenges to Tax Commission assessments. We disagreed and held that authority to challenge Tax Commission rulings was present

> where a county challenges not just the validity of a particular assessment, but the constitutionality of the [challenged statute]

§§ 59-2-906.3, -913, -918, & -924, prevent taxing entities from budgeting additional revenues regardless of fluctuations in taxable value. Although it may be difficult, if not impossible, to retroactively apply the procedural "Truth in Taxation" requirements with respect to prior tax budgets, a taxing entity clearly would benefit from additional apportioned taxable value for future years in which the entities may desire to budget additional revenues or reduce mill levies for constituents.

7. The Tax Commission in the instant case relies on a somewhat cryptic statement in *Kennecott*, where we noted that other courts had held that "the right of judicial review in tax assessment cases is by statute limited to a specific class, and it cannot be extended to entities, such as counties, not fairly within the statutory provisions." 702 P.2d at 455. Although *Kennecott* agreed with this "rule" as a general principle, it also clearly held that counties in Utah do in fact possess the right to seek judicial review, at least with respect to "the constitutionality of ... assessment statutes and assessment methods generally." *Id. Kennecott*'s holding was similar to that in earlier cases where counties petitioned for certiorari pursuant to this court's constitutional authority to issue extraordinary writs. *See Kane County Bd. of Equalization v. State Tax Comm'n*, 88 Utah 219, 223–25, 50 P.2d 418, 420–21 (1935) (holding that, in absence of statutory authorization for review of Tax Commission rulings, certiorari review was justified because there existed no other "plain, speedy, and adequate remedy in the ordinary course of the law"); *see also Salt Lake County v. Tax Comm'n ex rel. Laborers Local No. 295*, 658 P.2d 1192, 1192–94 (Utah 1983) (hearing case on certiorari review); *Salt Lake County v. Tax Comm'n ex rel.*

and assessment methods generally. Clearly, the decision of assessing authorities is subject to judicial review when they value property pursuant to a statute or method claimed to be unconstitutional, or have otherwise acted outside their statutory authority.

*Kennecott*, 702 P.2d at 455.[7]

¶ 15 At the time we handed down our decision in *Kennecott*, there was no statute specifically authorizing county challenges to the Tax Commission's actions.[8] We nevertheless noted that Utah Code Ann. § 17-4-3(1) "grants the counties power to 'sue and be sued,' where they may, under other applicable statutes or principles, properly sue or be sued." *Id.* at 456. We held that this grant of power was sufficient to allow a county to challenge assessments where the county demonstrated a distinct and palpable

*Greater Salt Lake Recreational Facilities*, 596 P.2d 641, 642–43 (Utah 1979) (same); *Salt Lake County v. Tax Comm'n ex rel. Good Shepherd Lutheran Church*, 548 P.2d 630, 630 (Utah 1976) (same).

8. While *Kennecott* was pending, the legislature explicitly authorized county challenges to Tax Commission assessments. *See* 1983 Utah Laws ch. 278, §§ 1, 2. These provisions were later repealed. Currently, Utah Code Ann. § 59-2-1007(1)(a) (Supp.1998) grants similar rights as follows:

> If the owner of any property assessed by the commission, *or any county* upon a showing of reasonable cause, objects to the assessment, either party may, on or before June 1, apply to the commission for a hearing.

(Emphasis added.) There is no indication that the legislature intended this statute to vest in counties the exclusive power to challenge Tax Commission actions. Therefore, *Kennecott* still governs standing questions outside the purview of section 59-2-1007(1). Moreover, the instant case illustrates the dilemma that can arise when municipalities and school districts within a county have adverse interests. Other municipalities and school districts within Salt Lake County stand to lose significant apportioned revenue if Salt Lake City prevails. Thus, Salt Lake City cannot rely upon Salt Lake County to litigate its interests. If we were to hold that suits presenting legitimate challenges to the constitutionality of statutes or Tax Commission rules must always be presented by counties, then suits such as this one could never arise without compelling counties to favor the fiduciary interests of certain constituents at the expense, indeed betrayal, of others.

injury and asserted that the Tax Commission's methodology violated the Utah Constitution or was outside the Commission's statutory authority. *Id.* at 454–56. Notably, Salt Lake City and Salt Lake City School District possess the same general statutory authorization for bringing legal actions that Salt Lake County possessed when *Kennecott* issued. Both Utah Code Ann. § 10-1-202 (1996), governing municipalities, and Utah Code Ann. § 53A-3-401(3) (1997), governing school boards, grant the power to "sue and be sued." [9]

¶ 16 The fact that *Kennecott* involved county governments does not create any distinction justifying a different treatment for municipalities and school districts with respect to standing to sue. All taxing entities possess interests and responsibilities of a similar nature, if not always the same scope. There are numerous instances in Utah case law where municipalities and school districts have brought claims against other political subdivisions or state agencies, many of them involving tax issues. *See, e.g., West Valley City Corp. v. Salt Lake County,* 852 P.2d 1000, 1001–03 (Utah 1993); *Salt Lake City v. Tax Comm'n,* 813 P.2d 1174, 1174–76 (Utah 1991); *Boards of Educ. v. Salt Lake County Comm'n,* 749 P.2d 1264, 1264–65 (Utah 1988); *Board of Educ. v. Salt Lake County,* 659 P.2d 1030, 1032–33 (Utah 1983); *Salt Lake City v. Salt Lake County,* 568 P.2d 738, 740 (Utah 1977); *Salt Lake City v. Salt Lake County,* 550 P.2d 1291, 1292 (Utah 1976); *Salt Lake City v. Tax Comm'n,* 11 Utah 2d 359, 360–61, 359 P.2d 397, 397–98 (1961). The Tax Commission is unable to cite a single instance where this court has held that a municipality or school district had no standing to defend its interests when it had suffered a distinct and palpable injury.

¶ 17 To summarize, the injury alleged and the interests involved are substantially the same in the instant case as those examined in *Kennecott.* Although *Kennecott* technically involved assessments rather than apportionment methodology, the significance of the issues raised and the injury alleged in the instant case are indistinguishable for purposes of the standing question. Therefore, both Salt Lake City and Salt Lake City School District possess standing to challenge the straight line method of apportioning aircraft value among the various tax levying districts of Utah.

## II.  DISTRICT COURT JURISDICTION OVER RULEMAKING PROCEEDINGS

¶ 18 The legislature has general authority to assign appellate jurisdiction to district courts. *See* Utah Const. art. VIII, § 5. Salt Lake City brought its appeal of the Tax Commission's Rulemaking Order pursuant to Utah Code Ann. § 63-46a-12.1, which states:

---

9. The Tax Commission cites to decisions from other jurisdictions where courts have held that political subdivisions are merely arms or agents of the state and may not sue each other or the state. *See, e.g., School Dist. No. 55 v. Musselshell County,* 245 Mont. 525, 802 P.2d 1252, 1254 (1990) (holding that absent specific statutory or constitutional provision, "one governmental subdivision may not sue another for damages"); *State v. Board of County Comm'rs of Johnson County,* 642 P.2d 456, 458 (Wyo.1982) (same). In response, Salt Lake City cites contrary authority holding that school districts possess the authority to sue other subdivisions of the state. *See Idaho Schools for Equal Educ. v. Evans,* 123 Idaho 573, 850 P.2d 724, 736 (1993); *Independent School Dist. No. 1 v. Common School Dist. No. 1,* 56 Idaho 426, 55 P.2d 144, 146 (1936). These cases merely illustrate that there is a split of authority on the question. While it is true that political subdivisions are, as a general matter, beholden to the state, their creator, those subdivisions do possess distinct political identities, and

a state may authorize subdivisions to defend their interests. Although the cited cases disagree somewhat on the question of how broadly delegated powers should be construed, all of them acknowledge the authority of subdivisions to file intrastate suits where power to do so has been properly bestowed by statute or other grant of authority. *See, e.g., Evans,* 850 P.2d at 736 (explaining that statutory right to "sue and be sued" affords school districts broad powers to pursue litigation); *Musselshell County,* 802 P.2d at 1255 (conceding that express or implied authority to sue may be granted); *County Comm'rs of Johnson County,* 642 P.2d at 458 (same, but requiring specific grant of authority). *Compare East Grand County Sch. Dist. No. 2 v. Town of Winter Park,* 739 P.2d 862, 865 (Colo.Ct.App.1987) (finding implicit statutory authorization to sue) *with East Jackson Pub. Schools v. State,* 133 Mich.App. 132, 348 N.W.2d 303, 306 (1984) (finding no statutory authorization) *and O'Flaherty v. State Tax Comm'n,* 680 S.W.2d 153, 154–55 (Mo.1984) (same).

Any person aggrieved by a rule may obtain judicial review of the rule by filing a complaint with the county clerk in the district court where the person resides or in the district court in Salt Lake County.

Despite this provision, the district court held that it possessed no jurisdiction. The court ruled that our decision in *Evans & Sutherland v. Tax Comm'n*, 953 P.2d 435, 443 (Utah 1997), rendered section 63–46a–12.1 unconstitutional and deprived the court of jurisdiction to review Salt Lake City's petition from the Rulemaking Order. In *Evans & Sutherland*, we held that Utah Code Ann. § 59–1–601 (1996) violated the Utah Constitution because its provisions for trial de novo in the district courts purported to confer upon those courts the power to "adjust and equalize the valuation and assessment of property among the several counties"—a power explicitly reserved to the Tax Commission under article XIII, section 11 of the Utah Constitution.[10] *Evans & Sutherland*, 953 P.2d at 442–43. Because the power of de novo review in section 59–1–601 "effectively eliminates the Tax Commission's role whenever one of the parties chooses to seek review under that section," we concluded that it violated article XIII, section 11. *Id.* at 443.

■ ¶ 19 In contexts other than de novo review, however, we have explicitly authorized traditional appellate review. In *Kennecott Corp. v. Salt Lake County*, 702 P.2d 451, 457 (Utah 1985), we held that the statute at issue empowered district courts to perform the traditional appellate role of "revers[ing] and remand[ing] the matter to the Commission for a proper determination pursuant to correct legal standards." *Id.* This holding was consistent with a multitude of prior cases in which this court has undertaken review of the legality of Tax Commission decisions. *See, e.g., Salt Lake City v. Tax Comm'n*, 813 P.2d at 1174–76; *Salt Lake County v. Tax Comm'n ex rel. Laborers Local No. 295*, 658 P.2d at 1192–94; *Salt Lake County v. Tax Comm'n ex rel. Greater Salt Lake Recreational Facilities*, 596 P.2d at 642–43; *Salt Lake County v. Tax Comm'n ex rel. Good Shepherd Lutheran Church*, 548 P.2d at 630; *Salt Lake City v. Tax Comm'n*, 11 Utah 2d at 360–61, 359 P.2d at 397–98. Nothing we said in *Evans & Sutherland* purported to modify *Kennecott*'s holding insofar as it concerned review of the constitutionality and legality of Tax Commission decisions.

■ ¶ 20 Hence, the district court incorrectly construed our holding in *Evans & Sutherland*. As *Kennecott* made clear, article XIII, section 11 of the Utah Constitution does not prohibit all forms of judicial review of Tax Commission decisions. At the time *Kennecott* issued, the constitution merely proscribed de novo review. Indeed, some form of traditional appellate judicial review is essential to ensure that the Tax Commission properly applies relevant law and does not act outside its jurisdiction. *See McBride v. Motor Vehicle Div.*, 977 P.2d 467, 470–71 (1999).

¶ 21 In the instant case, Salt Lake City requested nothing more in its petition on the Rulemaking Order than that which we explicitly stated was permissible in *Kennecott*. Salt Lake City sought a ruling declaring the straight line apportionment method unconstitutional and illegal. The district court's ruling that *Evans & Sutherland* deprived it of jurisdiction over the Rulemaking Order was

---

**10.** The lead opinion in *Evans & Sutherland* also stated that the statute violated article V, section 1, pertaining to separation of powers. That portion of the opinion, however, was not joined by a majority of the court. *See id.* at 444 (Howe, J., concurring in the result, and Stewart, J., and Durham, J., concurring). Recently, article XIII was amended. 1998 S.J.R. 13, § 1 proposed amending article XIII, section 11(5) to read:

Notwithstanding the powers granted the State Tax Commission in this Constitution, the Legislature may authorize any court established under Article VIII to adjudicate, review, reconsider, or redetermine any matter decided by the State Tax Commission or by a County Board of Equalization relating to revenue and taxation as provided by statute.

This proposed amendment was approved in the November 1998 general election, and it took effect on January 1, 1999. Section two of the joint resolution authorizes the legislature to make its provisions retroactive. *See* 1998 Utah Laws, S.J.R. 13, § 2. The amendment's applicability to the present dispute is not clear and has not been briefed by the parties; moreover, the amendment could not change the outcome of our decision. We therefore note its advent but do not rely upon it.

incorrect, and we accordingly reverse and remand.

## III. THE LEGALITY OF THE TAX COMMISSION'S STRAIGHT LINE APPORTIONMENT METHOD

¶ 22 Salt Lake City's chief contention on the merits is that the straight line apportionment method violates the Utah Constitution and is illegal under state and federal law. We first examine the contention that the Tax Commission's method for apportioning taxable aircraft value is unconstitutional. Article XIII, section 10 states in pertinent part:

All corporations or persons in this State, or doing business herein, shall be subject to taxation for State, County, School, Municipal or other purposes, on the real and personal property *owned or used by them within the Territorial limits of the authority levying the tax.*

Utah Const. art. XIII, § 10 (emphasis added).

■ ¶ 23 In light of this provision, we must determine whether aircraft passing through the navigable airspace above a taxing authority are "owned or used . . . within [its] Territorial limits." [11]

¶ 24 "[T]he critical aspect of any constitutional interpretation is to 'divin[e] the intent and purpose of the framers.'" *Monson v. Carver,* 928 P.2d 1017, 1025 (Utah 1996) (quoting *Society of Separationists v. Whitehead,* 870 P.2d 916, 921 n. 6 (Utah 1993)). The constitution's late-nineteenth-century drafters likely did not foresee the advent of commercial aviation and certainly could not have envisioned its scope and impact in the latter part of the twentieth century. Nevertheless, it is our task to discern the most reasonable interpretation of the scope of article XIII, section 10 in the modern context.

■ ¶ 25 Fundamentally, the constitutional provision allowing taxation on property "owned or used within the Territorial limits" of a tax-levying entity describes a jurisdictional threshold grounded in principles akin to (if not entirely mandated by) due process and fundamental fairness. In other contexts, this type of threshold typically has been articulated in terms of a contact or nexus between the property or persons taxed and the entity levying the tax that is substantial enough to justify imposition of the tax. *See Murdock v. Murdock,* 38 Utah 373, 376–77, 113 P. 330, 332 (1911) ("[T]he controlling question [in interpreting article XIII, section 10] always is, [w]here is the property situated?"). For instance, federal due process analysis of tax cases relies upon " 'some definite link, some minimum connection between a state and the person, property or transaction it seeks to tax.' " *Quill Corp. v. North Dakota,* 504 U.S. 298, 306, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (quoting *Miller Brothers Co. v. Maryland,* 347 U.S. 340, 344–45, 74 S.Ct. 535, 98 L.Ed. 744 (1954)); *cf. American Oil Co. v. Neill,* 380 U.S. 451, 458, 85 S.Ct. 1130, 14 L.Ed.2d 1 (1965) (" '[N]exus' between the taxing State and the taxpayer is the outstanding prerequisite on state power to tax."). Similarly, dormant Commerce Clause analysis propounds a test that includes consideration of whether the tax is "applied to an activity with a substantial nexus with the taxing [entity]." [12] *Complete*

---

11. In its briefs, the Tax Commission asserted that the "authority levying the tax" could be properly interpreted as the Tax Commission itself. Since the Tax Commission possesses state-wide jurisdiction, and if it were in fact the authority levying the tax, it would not need to rely on overflights but could levy upon the aircraft on the ground at Salt Lake City International Airport. Although local taxing authorities have always assumed direct responsibility for the levy and collection of tax revenues, the Tax Commission's argument assumed that its act of apportionment had the practical effect of levying the tax and then redistributing it among the various taxing entities. In fact, the constitution explicitly forbids any such scheme of statewide levy and redistribution. *See* Utah Const. art. XIII, § 5 ("The Legislature shall not impose taxes for the purpose of any county, city, town or other municipal corporation. . . ."); Utah Const. art. VI, § 28 ("The Legislature shall not delegate to any special commission . . . any power to . . . levy taxes. . . ."). Confronted with this dilemma, the Tax Commission conceded at oral argument that it was not the "authority levying the tax" under article XIII, section 10.

12. Dormant Commerce Clause analysis is less useful as an analogy because it is more concerned with defining the scope of state governmental authority vis-a-vis the federal government's preeminent role in regulating interstate commerce. Nevertheless, even Commerce

*Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); *see also Oklahoma Tax Comm'n v. Jefferson Lines Inc.,* 514 U.S. 175, 184, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995).

¶ 26 Jurisdictional thresholds such as that propounded by article XIII, section 10 assure that taxes are not levied arbitrarily against persons or property having no substantial contact with the levying entity. Where there is no genuine contact, a levying entity cannot justify funding its institutions or operations by collecting from a stranger. *See Union Refrigerator Transit Co. v. Kentucky,* 199 U.S. 194, 202, 26 S.Ct. 36, 50 L.Ed. 150 (1905); *Salt Lake County v. State Bd. of Equalization,* 18 Utah 172, 181, 55 P. 378, 380 (1898). Hence, under article XIII, section 10, the levying entity must demonstrate a substantial or tangible nexus of some kind between the ownership or use of property and the territory of the entity itself.[13]

¶ 27 Salt Lake City argues that aircraft passage at high altitude is too transient and ephemeral to satisfy the constitution's requirement of a substantial or tangible nexus. The Tax Commission contends, on the other hand, that with respect to the straight line apportionment method, aircraft passage overhead is analogous to transit of rolling stock on rails or common carriers on roads—property that is taxable because it is regularly "used" within the territorial boundaries of the taxing entity.

¶ 28 The Tax Commission's analogy to mobile assets that travel on the ground is inapt. The passage of an aircraft for a few seconds or minutes at thousands of feet in the skies above a taxing entity simply does not create the sort of tangible or substantial contact with the taxing entity required as a

threshold for constitutional jurisdiction to tax under article XIII, section 10. The basis for taxation in any context assumes a rational relationship between the tax collected and the benefits or services provided by government.[14] *See Fulton Corp. v. Faulkner,* 516 U.S. 325, 334, 116 S.Ct. 848, 855, 133 L.Ed.2d 796 (1996); *Jefferson Lines,* 514 U.S. at 200, 115 S.Ct. 1331; *Maryland v. Louisiana,* 451 U.S. 725, 754, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981); *Union Refrigerator Transit,* 199 U.S. at 202, 26 S.Ct. 36; *Crystal Car Line v. State Tax Comm'n,* 110 Utah 426, 436, 174 P.2d 984, 989 (1946).

¶ 29 As we stated in one of our earliest cases treating article XIII, section 10:

> The consideration received by the company for the tax taken by the county consists in the protection and benefits to its property and business from the county and its authorities.... To give the tax to another county would violate the fundamental principles upon which its collection can be justified.

*Salt Lake County,* 55 P. at 380. Although the contractual metaphor of "consideration" as a justification for taxation may no longer be appropriate, the underlying principle— that taxed persons and property ought to be associated in some measurable way with the governmental communities levying the tax and thereby benefit from the general services provided—remains sound. Whereas railways and common carriers require tangible rail, road, and maintenance facilities on the ground and implicitly benefit from the government services and institutions of the political entities through which they pass, *see id.,* aircraft ordinarily navigate airspace without any noticeable or substantial impact on the territories over which they fly. They do not avail themselves of any services or place

Clause analysis of taxes is ultimately rooted in the notion that taxes presume a relevant and substantial degree of contact between the taxing entity and the taxed property or person.

**13.** We do not hold that the result in this case is necessarily *mandated* by due process cases in other contexts. Article XIII, section 10 does not so much create a separate due process mandate as it defines the relevant boundaries of taxing

communities on the basis of fundamental concepts of fairness in taxation.

**14.** This is not to say that the benefits or services need be wholly proportional to the tax or dispensed in a manner designed to confer a direct benefit upon any individual taxpayer. *See Jefferson Lines,* 514 U.S. at 199–200, 115 S.Ct. 1331; *Union Refrigerator Transit,* 199 U.S. at 202, 26 S.Ct. 36.

any measurable burden upon the political entities below them.[15]

¶ 30 We therefore conclude that the straight line apportionment method employed by the Tax Commission violates article XIII, section 10 of the Utah Constitution. Because this determination disposes of the case, we need not address Salt Lake City's other arguments based on federal preemption and state statutory law.

## CONCLUSION

■ ¶ 31 In sum, we reverse the district court's holding that it had no jurisdiction to treat Salt Lake City's petition from the Tax Commission's Rulemaking Order and remand for further proceedings consistent with this opinion. We also reverse the Tax Commission's ruling in its Adjudicatory Order based upon the straight line apportionment method and remand for promulgation of a rule that conforms with the principles announced in this opinion. Because retroactive application of our holding in this particular case could potentially create substantial disruption and chaos relating to tax revenues already collected and disbursed, our ruling shall be prospective only from the date it issues. *Cf. Boards of Educ.*, 749 P.2d at 1267–68 & n. 7; *Board of Educ.*, 659 P.2d at 1037.

¶ 32 Chief Justice HOWE, Justice STEWART, Justice ZIMMERMAN, and Judge LEWIS concur in Justice RUSSON's opinion.

¶ 33 Having disqualified herself, Associate Chief Justice DURHAM does not participate herein; District Court Judge LESLIE A. LEWIS sat.

---

15. The amicus school districts note that if an aircraft crashes, emergency services must be provided on the ground. It is generally understood that such catastrophes are extraordinarily rare. Moreover, because actual flight paths may vary significantly from a straight line origin to destination route, and because accidents occurring at extreme altitude would not necessarily lead to a crash along, or even near, the flight path, the hypothetical need to provide emergency services does not bear any substantial relation to the asserted right to levy the tax.